**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DAVID RIGO FERNANDEZ**, *individually and on behalf of all others similarly situated*, | Civil Action No. 2:23-cv-03161 (SDA) |
| Plaintiffs, | Hon. Stacey D. Adams, U.S.M.J |
| v. | |
| **DOUYU INTERNATIONAL HOLDINGS LIMITED, SHAOJIE CHEN,** and **MINGMING SU**, | **OPINION ON MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| Defendants. | **March 31, 2025** |

<u>**STACEY D. ADAMS, UNITED STATES MAGISTRATE JUDGE**</u>

This matter is before the Court on a Motion for Preliminary Approval of the Class Action Settlement filed by lead plaintiffs Raphael Seiler and Pedro Reyes (together, "Lead Plaintiffs") on July 31, 2024. (ECF No. 62) (the "Motion"). Defendants DouYu International Holdings Limited ("DouYu"), Shaojie Chen ("Chen"), and Mingming Su ("Su") (collectively, "Defendants") do not oppose the Motion. *See Id.* The Court heard oral argument on November 13, 2024. (*See* ECF No. 74). The Court requested the parties submit additional information pursuant to its Letter Order dated November 13, 2024. (ECF No. 75). The Court is in receipt of the updated information, some of which was reviewed *in camera*. (ECF No. 76). For the reasons stated herein, the Motion is **GRANTED**.

1

**FACTUAL BACKGROUND/RELEVANT PROCEDURAL HISTORY[1]**

Plaintiffs bring this putative class action on behalf of persons or entities who purchased publicly traded DouYu American Depository Shares ("ADSs") between April 30, 2021 and November 27, 2023 (the "Class Period"). (ECF No. 50, Second Amended Class Action Complaint ("SAC") ¶ 1). Plaintiffs seek to recover damages caused by Defendants' alleged violations of the federal securities laws under sections 10(a) and (b) of the Exchange Act.[2] (*Id.*). Plaintiffs are those who purchased DouYu ADSs during the Class Period and were economically damaged. (*Id.* ¶ 16). Defendant DouYu is a Chinese livestreaming platform listed on the NASDAQ. (*Id.* ¶ 2). DouYu is incorporated in the Cayman Islands and has its principal place of business in China. (*Id.* ¶ 17). Chen founded DouYu and has served as its chief executive officer and director since May 2014. (*Id.* ¶ 18). Su has served as DouYu's chief strategy officer since November 2015, director since October 2016, and the Company's principal financial officer throughout the Class Period. (*Id.* ¶ 19).

DouYu derives its revenue from commissions earned through virtual gifts that viewers send to streamers during livestream performances on its platform, accounting for more than 90% of its revenue. (*Id.*). During the Class Period, DouYu had a decrease in user engagement and virtual gifts and allegedly inflated its financial performance by secretly assisting streamers in organizing illegal gambling activities, in violation of Chinese law. (*Id.* ¶ 3). According to the SAC, DouYu devised a script for streamers to conceal the company's involvement directing streamers to transfer cash prizes to gamblers through unrelated third-party channels to evade Chinese gambling laws. (*Id.*). Concurrently, in SEC filings, DouYu falsely portrayed itself to investors as responsibly managing

---

[1] The Court gleans the following from Plaintiffs' Second Amended Complaint, filed on April 4, 2024. (ECF No. 50, "SAC").

[2] Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*

content on its platform. (*Id.*). DouYu failed to disclose its misconduct to its investors and the associated material risk that the Chinese authorities would impose significant penalties on DouYu, which would have an adverse impact on their business and operations. (*Id.*).

In March 2023, unbeknownst to investors, DouYu made additional efforts to counter declining revenue by relaxing their internal regulations on explicit content on its platform by encouraging streamers to livestream pornographic material to attract paying users, in violation of Chinese law. (*Id.* ¶ 5). Despite warnings and orders from the Chinese government to rectify misconduct, DouYu persisted in its non-compliance, exposing itself to further risk of penalties from Chinese authorities. (*Id.* ¶ 6). On May 8, 2023, the Cyberspace Administration of China ("CAC"), a Chinese regulatory agency, mandated a one-month rectification for DouYu under the CAC's onsite supervision. (*Id.* ¶ 7). On May 9, 2023, DouYu acknowledged the ongoing supervised rectification, and Bloomberg reported the CAC previously summoned DouYu for interviews regarded its illegal pornography and gambling content. (*Id.*) With this news, DouYu's ADSs fell over 12%. (*Id.*).

In October 2023, the Chinese government detained Chen in connection with DouYu's violations, and DouYu's ADS fell another 10%. (*Id.* ¶ 8). On November 22, 2023, Chinese authorities announced Chen was arrested for the "crime of operating a gambling establishment." (*Id.* ¶ 10). With this news, DouYu's ADS price dropped by $0.57 per ADS or 5.93% on November 21, 2023, followed by a further decrease of $0.02 per ADS or 0.22% on November 22, 2023. (*Id.*). On November 25 and 27, 2023, news reports revealed additional details of DouYu and Chen's alleged crimes, including that they aided, abetted, and coerced money laundering and illegal gambling on its platform. (*Id.* ¶ 11). On this news, DouYu's ADS price further dropped 8.7% on November 27, 2023, then another 4.43% on November 28, 2023. (*Id.*).

Plaintiffs bring this action for violations of § 10(b) of the Exchange Act, as well as Rule 10-b-5 promulgated thereunder by the SEC. (*Id.* ¶ 162). Specifically, Plaintiffs allege that, during the Class Period, Defendants individually and in concert, disseminated or approved false statements which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts. (*Id.* ¶ 163). Plaintiffs contend they would not have purchased the ADSs if the market price was not artificially inflated by the false statements. (*Id.* ¶ 168).

This matter was originally filed on June 9, 2023. (ECF No. 1). On August 24, 2023, the Honorable Evelyn Padin, U.S.D.J. granted an unopposed motion which: (1) appointed Plaintiffs Raphael Seiler ("Seiler") and Pedro Reyes ("Reyes") as Co-Lead Plaintiffs and (2) appointed the Rosen Law Firm and Glancy Prongay & Murray LLP ("GPM") as co-Lead counsel. (ECF No. 24). Plaintiffs filed an amended complaint on November 16, 2023 (ECF No. 39). Defendants filed a Motion to dismiss the first amended complaint on March 4, 2024. (ECF No. 43). Plaintiffs filed the operative complaint, the SAC, on April 4, 2024. (ECF No. 50). Defendants were prepared to file a second motion to dismiss. (ECF Nos. 54, 55). However, after months of settlement negotiations, on July 31, 2024, the parties submitted a settlement agreement to the Court and Plaintiffs filed the instant, unopposed motion. (ECF Nos. 61, 62).

The parties appeared for oral argument on the Motion on November 13, 2024. There, the Court raised certain concerns and required Plaintiffs to submit more information. Specifically, the Court requested that Plaintiffs submit: (1) an affidavit from the claims administrator addressing how class members are going to be determined, how contact information for class members would be ascertained; how large institutional shareholders will notify class members; and what process will be followed to identify class members in the event of a bad email or mailing address; (2) a

certification of Plaintiff's damages expert to be submitted *in camera*; and (3) a certification from Plaintiffs' investigator, to be submitted *in camera*. (ECF No. 75).

## **THE PROPOSED SETTLEMENT**

**The Proposed Settlement Class**

The Settlement Class is defined as "all Persons who purchased DouYu [ADSs] during the Class Period and were damaged thereby." (ECF No. 61, "Settlement Agreement," at 11). It excludes Defendants, the present and former officers and directors of the company and their immediate families, as well as their legal representatives, heirs, successors or assigns and any entity in which such present and former officers and directors have or had a controlling interest, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest. (*Id.*) Also excluded are those who purchased company securities through private transactions and/or exchanges. (*Id.*)

**The Settlement**

The settlement provides that Defendants shall deposit $2,250,000 into an escrow account within 30 calendar days after the later of: (i) the Court granting Preliminary Approval of the settlement; or (ii) transmission to Defendants' Counsel of complete payment instructions for a wire transfer. The settlement fund is to be invested exclusively in instruments or accounts backed by the full faith and credit of the U.S. Government or fully insured by the U.S. Government or any agency thereof. (*Id.* at 16). The parties have come to a confidential agreement that if the number of opt-outs reaches a certain threshold, Defendants have the option to terminate the settlement.[3]

---

[3] This has no impact on the fairness of the settlement. *See Hacker v. Elec. Last Mile Sols. Inc.*, No. 22-cv-545 (MEF) (LDW), 2024 WL 5102696, at *9 (D.N.J. Nov. 6, 2024) ("Supplemental

(*Id.*). Approximately $750,000 in attorney's fees and $100,000 in costs will be deducted from the settlement fund. (Settlement Agreement at 12; Exh. A-1 to Settlement Agreement at 1). Finally, each class member's putative share of the settlement will be determined by the following formula:

> For ADSs purchased and sold during the Settlement Class period, the Recognized Loss per ADS shall be the lessor of (1) the inflation per ADS upon purchase less the inflation per ADS upon sale; or (2) the purchase price per ADS minus the sales price per ADS.
>
> For ADSs purchased during the Settlement Class Period and sold during the period November 28, 2023 through February 23, 2024, inclusive, the Recognized Loss shall be the *lesser* of: (1) the inflation per ADS upon purchase; or (2) the difference between the purchase price per ADS and the average closing ADS price as of date of sale.
>
> For ADSs purchased during the Settlement Class Period and retained as of the close of trading on February 23, 2024, the Recognized Loss shall be the *lesser* of: (1) the inflation per ADS upon purchase; or (2) the purchase price per ADS minus $.79 per ADS.

(Settlement Agreement, Exh. A-1, at 7). The Settlement Agreement includes a table showing the inflation per ADS based on the period during which the ADS was purchased, and a table showing the average closing ADS price on the date of sale to assist class members in calculating how much they are entitled to under the settlement. (*Id.* at 8).

## GOVERNING LAW AND ANALYSIS

### I. Preliminary Approval of Class Action Settlement

Approval of a class action settlement is a two-step process: (1) preliminary approval and (2) a subsequent fairness hearing. *Easterday v. USPack Logistics*, No. 15-cv-7559 (RBK) (AMD), 2023 WL 4398491, at *5 (D.N.J. July 6, 2023) (internal citations omitted). At the preliminary

---

agreements concerning opt-outs are kept confidential to avoid creating incentives for a small group of investors to opt out solely to leverage the threshold to extract an individual settlement, and has no bearing on the fairness of the Settlement.") (internal citations omitted).

approval stage, the parties submit the proposed settlement to the court for a fairness evaluation. *Id.* If the proposed settlement is preliminarily acceptable, the Court directs the notice to be provided to all class members who would be bound by the settlement for an opportunity to be heard on, object, and opt out. *Id.* (citing Fed. R. Civ. P. 23(c)(2), (e)(1), (e)(5)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Zimmerman v. Zwicker & Assocs., P.C.,* No. 09-cv-3905 (RMB) (JS), 2011 WL 65912, at *2 (D.N.J. Jan. 10, 2011). At this stage, "the court must determine whether the proposed settlement falls "within the range of fairness, reasonableness and adequacy" required by Rule 23(e)." *Easterday*, 2023 WL 4398491, at * 2 (quoting *In re Amino Acid Lysine Antitrust Litig.*, No. 95-cv-7679, 1996 WL 197671, at *4 (N.D. Ill. Apr. 22, 1996).

A proposed settlement "falls within the 'range of possible approval" so long as "there is a conceivable basis for presuming that the standard applied for final approval – fairness, adequacy, and reasonableness – will be satisfied." *Id.* (citing *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014)). Generally, preliminary approval should be granted "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, [and] does not improperly grant preferential treatment to class representatives or segments of the class[.]" *Id.* at 14 (quoting *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). A settlement is presumed fair when it results from "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). Preliminary approval is not simply a "rubber stamp" of the agreement. *In re Nat'l Football League*

*Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) (quoting *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 338 (N.D. Ohio 2001)).

### A. Requirements for Class Certification under Fed. R. Civ. P. 23

The parties request that the class be certified for settlement purposes only. *See* Settlement Agreement, at 22. The Third Circuit has observed that "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." *In re Comm. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 799 (3d Cir. 1995)) (alterations omitted). "The requirements of [Rule 23] (a) and (b) are designed to ensure that a proposed class has 'sufficient unity so that absent class members can fairly be bound by decisions of class representatives.'" *In re Prudential Ins. Co.*, 148 F.3d 283, 309 (3d Cir. 1998) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 621(1997)).

### 1. Fed. R. Civ. P. 23(a) Requirements

The requirements of Rule 23(a) must be met whether certification is sought for the purpose of proceeding with litigation or, as here, for the purpose of proceeding toward settlement. *See Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 379 (3d Cir. 2013). Class certification is appropriate where the prospective class establishes: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); (4) and the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016). All requirements of Fed. R. Civ. P. 23

must be proven by a preponderance of the evidence. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008).

### i.    Numerosity

Generally, if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40, that will satisfy the numerosity requirement. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012) (quoting *Stewart v. Abraham*, 275 F. 3d 220, 226-27 (3d Cir. 2001)). Fed. R. Civ. P. 23(a) requires an examination of the specific facts in each case. *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980). "In a securities action, a court may infer that the numerosity requirement is met from allegations of the number of transactions during the relevant period, even if the number of class members is not precisely known." *Smith v. Suprema Specialties*, No. 02-cv-168 (WHW), 2007 WL 1217980, at *4 (D.N.J. Apr. 23, 2007) (internal citations omitted); *See also Kanefsky v. Honeywell Int'l Inc.*, No. 18-cv-15536 (WJM), 2022 WL 1320827, at *7 (D.N.J. May 3, 2022) ("[C]ourts in this Circuit 'have recognized a presumption that the numerosity requirement is satisfied when a class action involves a nationally traded security.'") (internal citations omitted).

In this securities class action litigation, Plaintiffs state that the exact number of class members is unknown. (SAC ¶ 153). In the complaint, Plaintiffs believes there were "hundreds, if not thousands of members in the proposed Class." (*Id.*) In their brief, Plaintiffs contend Defendant's ADSs were publicly traded on NASDAQ, "with millions of shares trading during the Settlement Class Period." (ECF No. 62-1, Pl. Br.,[4] at 6. Accordingly, the Court finds the numerosity requirement has been met on a preliminary basis. *See Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 339 (D.N.J. 2018) (finding the numerosity requirement to be met where the

---

[4] Plaintiff's Memorandum of Law in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Providing for Notice, ECF No. 62-1, shall be referred to herein as "Pl. Br.".

defendant's stock was actively traded on the NASDAQ stock exchange during the class period and the class period was approximately three years.)

### ii.    Commonality

Fed. R. Civ. P. 23(a)(2) "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and their claims must depend on a common contention of such a nature that it is capable of class-wide resolution. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Being capable of class-wide resolution "means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

Courts in this District have routinely found commonality in securities fraud class actions where the claims are predicated upon the same underlying misrepresentations. *See, e.g., In re Humanigen, Inc. Sec. Litig.*, No. 22-cv-5258 (WJM), 2024 WL 4182634, at *8 (D.N.J. Sept. 13, 2024) (holding the commonality requirement was satisfied where the dispute involved common issues relating to securities fraud, the resulting harm to the class, and the appropriate measure of class damages); *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 75 (D.N.J. 2019) (finding commonality to be met where "[t]he class claims are predicated upon the same underlying misrepresentations and omissions by [d]efendants, presenting common issues of both fact and law arising thereunder"). Plaintiffs contend that the following common questions of law and fact predominate in the instant matter:

> (i) Defendants made materially false and misleading statements during the Class Period;
>
> (ii) Defendants acted knowingly or recklessly in making materially false and misleading statements or omitting material facts they were duty bound to disclose;

(iii) Defendants' materially false and misleading statements or omissions caused members of the Settlement Class to suffer damages; and

(iv) as a result of the Defendants' alleged violations of the Exchange Act, Settlement Class Members were damaged and, if so, the proper measure of damages.

(Pl.Br. at 7). The Court agrees that all of the putative class members claims are based upon the same underlying facts and claims. Accordingly, the commonality requirement is satisfied on a preliminary basis.

### iii.    Typicality

The typicality requirement "ensures the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *Newton v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 259 F.3d 154, 182-83 (3d Cir. 2001) (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998)). The typicality requirement "does not require that all putative class members share identical claims." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). Instead, "so long as 'the claims of the names plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences.'" *Id*. (internal citations omitted). "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 51 (3d. Cir. 1994).  The Third Circuit has set a "'low threshold' for typicality," and courts seek to "ensure[] the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *In re Nt'l Football League*, 821 F.3d at 428 (quoting *Newton*, 259 F.3d at 182-83).

Here, the Lead Plaintiffs' claims are typical of those of the Settlement Class because they allege they purchased DouYu's ADSs at prices artificially inflated by Defendants' materially false and misleading statements, and that they and potential class members were injured for the same reasons. *See In re Humanigen*, 2024 WL 4182634, at *8 (finding typicality satisfied where the plaintiffs and the class members "were injured by the same common course of conduct by [d]efendants – the alleged issuance of false or misleading statements to artificially inflate [defendant's] stock price to the benefit of [d]efendants and ultimate harm of [p]laintiffs."). Accordingly, the typicality requirement is satisfied.

### iv.    Adequacy of Representation

Class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This fourth factor tests the qualifications of class counsel and representatives, and "aims to root out conflicts of interests within the class to ensure that all class members are fairly represented in the negotiations." *In re Nat'l Football Players*, 821 F.3d at 428. Class representatives must represent a class "capably and diligently." *Id.* at 430. A "minimal degree of knowledge" about the litigation is adequate. *Id.* (internal citations omitted).

### a.    Class Representatives

The Court must look toward the named plaintiffs to determine whether there is any conflict between their claims and those asserted on behalf of the class, and their ability and incentive to vigorously represent the interests of the class. *See Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F.App'x 94, 101 (3d Cir. 2013). Adequacy also evaluates class counsel under the Rule 23(g) factors, which include the work counsel has performed in identifying and investigating potential claims; counsel's experience handling class actions, complex litigation, and the types of claims

asserted; counsel's knowledge of applicable law; and the resources counsel will commit to representation. Fed. R. Civ. P. 23(g)(1)(A).

Here, the Lead Plaintiffs, i.e. class representatives, have been harmed in substantially the same way as all class members, there are no identifiable conflicts between their claims and those of the class at large, and they have ably represented the class as evidenced by this settlement. Accordingly, the Court finds the Lead Plaintiffs to be adequate.

### b. Class Counsel

In evaluating class counsel, the court must assess whether class counsel (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant. *Beltran*, 2023 WL 319895, at *10 (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d. Cir. 1995)). Class counsel, the Rosen Law Firm and GPM, are well-experienced and knowledgeable in the area of class action securities litigation. *See P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. 11-cv-2164 (JMV) 2017 WL 2734714, at *4 (D.N.J. June 26, 2017) (finding the Rosen Law Firm was diligent in identifying and investigating the asserted claims, prosecuting this litigation, and working toward settlement.) *Yedlowski v. Roka Bioscience*, No. 14-cv-8020 (FLW) (TJB), 2016 WL 6661336, at *7 (D.N.J. Nov. 10, 2016) (finding the Rosen Law Firm to be adequate class counsel because they have "successfully prosecuted securities class actions in courts throughout the country."); *Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 346 (D.N.J. 2018) (finding, with respect to The Rosen Law Firm and GPM, that the firms "have extensive experience in securities litigation[.]").

Class counsel vigorously prosecuted the action by independently investigating the claims, reviewing public information regarding the ADS prices; hiring an investigator in China to interview witnesses, hiring a damages expert to calculate the "best case scenario" damages for the

class; extensively researching the claims under American and Chinese laws; and opposing Defendants' Motion to Dismiss and pre-motion to dismiss letters. Finally, the Court finds that the settlement was negotiated at arm's length over several weeks as the result of a mediation session and discussions between counsel, who are highly experienced in securities class actions. Further, class counsel has committed, and will continue to commit, sufficient resources to representing the class. Accordingly, the Court finds class counsel to be adequate.

### 2. Fed. R. Civ. P. 23(b) Requirements

The parties must also demonstrate the proposed class satisfies "at least one of the three requirements listed in Rule 23(b)." *Beltran*, 2023 WL 319895, at *12 (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 345). Here, Plaintiffs rely on Fed. R. Civ. P. 23(b)(2), which applies when "questions of law or fact common to class members predominate over any questions affecting only individual members," and when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3).

### i.    Predominance

The predominance inquiry tests "whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d. Cir. 2011). "Predominance probes whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *McGowan v. CFG Health Network*, *LLC,* No. 22-cv-2770 (ZNQ) (RLS), 2024 WL 1340329, at *16 (D.N.J. Mar. 28, 2024) (internal citations omitted). "The focus of the predominance inquiry is on liability, not damages." *Suprema Specialties*, 2007 WL 1217980, at *9.

Here, the predominant factor is the Defendants' alleged conduct, inflating the ADS prices with materially false or misleading statements, that later led to significant decreases in share value

after the misrepresentations came to light Similar conduct in the securities context have been found sufficient to satisfy the predominance requirement:

> Here, as in many cases alleging an ongoing securities fraud scheme, there exist common questions of fact as to the participation of the various defendants. All member of the proposed class will seek a determination that the defendants misrepresented and omitted disclosing material facts, that these misrepresentations and omissions caused the artificial inflation of Suprema's stock, and that these alleged misrepresentations and omissions violated federal securities laws.

*Id.* As this conduct is common to all class members, the predominance factor is met.

### ii.    Superiority

"The superiority requirement asks a district court 'to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 309 (3d Cir. 2005) (citing *Georgine v. Amchem Prods., Inc.* 83 F.3d 610, 632 (3d Cir. 1996), *aff'd*, 521 U.S. 591, 138 (1997)). Pertinent matters in this inquiry include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and]
>
> (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). The Court must also consider the difficulty of managing the class and the ascertainability of the class. *Somogyi v. Freedom Mortg. Corp.*, 495 F.Supp. 3d 337, 347 (D.N.J. 2020).

When, as here, the certification is for the purpose of settlement, a showing of manageability for trial is not required, and ascertainability looks to whether the class is defined by objective criteria and there is a reliable and feasible method of determining whether class members fall within that definition. *Id.* Here, Plaintiffs' claims center on damages incurred when they relied on DouYu's statements in purchasing ADSs. It would not be feasible nor financially desirable for the class members to pursue individual claims when the facts are common to all and the case can more effectively be managed in a single concentrated action. The Court has not been made aware of any other litigation concerning these allegations. Therefore, adjudication of these claims as a class action is superior than other available methods of adjudication.

### B. Whether the Settlement is Fair, Reasonable, and Adequate under Fed. R. Civ. P. 23(e)

The Court may only approve the settlement after a hearing and only on finding that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). This includes consideration of whether: the class representatives and counsel have adequately represented the class; the proposal was negotiated at arm's length; the relief provided for the class is adequate; and the proposal treats class members equitably relative to each other. *Id.* In determining whether the relief is adequate, the court must take into account: the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorney's fees, including timing of payment; and any agreement required to be identified under Rule 23(e)(3). *Id.* In this Circuit, settlements, particularly in the context of large class actions, are favored. *See, e.g. Erheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (recognizing that:

> The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings…Settlement agreements are to be encouraged because they promote the amicable

resolution of disputes and lighten the increasing load of litigation faced by the federal courts [and] the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial).

In assessing the reasonableness of the settlement, the Court must be mindful that "[s]ettlements…reflect[] negotiated compromises. The role of a district court is not to determine whether the settlement is the fairest possible resolution [but only whether] the compromises reflected in the settlement…are fair, reasonable and adequate when considered from the perspective of the class as a whole." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173-74 (3d. Cir. 2013) (citation omitted); *see also Skeen v. BMW of North America, LLC*, No. 13-cv-1531 (WHW) (CLW), 2016 WL 4033969, at *7 (D.N.J. July 26, 2016).

To review the settlement, courts in this circuit analyze the settlement using nine factors from *Girsh v. Jespon*, 521 F.2d 153, 157 (3d Cir. 1975), as well as the permissive and non-exhaustive factors from *In re Prudential Ins. Co.*, 148 F.3d at 323.[5]

### 1. The *Girsh* Factors

The nine factors articulated in *Girsh* are:

(1)    the complexity, expense and likely duration of the litigation;
(2)    the reaction of the class to the settlement;
(3)    the stage of the proceedings and the amount of discovery completed;
(4)    the risks of establishing liability;
(5)    the risks of establishing damages;
(6)    the risks of maintaining the class action through the trial;
(7)    the ability of the defendants to withstand a greater judgment;

---

[5] The Court does not review the *Prudential* factors in detail in this decision. *See Castro v. Sanofi Pasteur, Inc.*, No. 11-cv-7178 (JMV) (MAH), 2017 WL 4776626, at *6 (D.N.J. Oct. 23, 2017) ("The Court does not have to perform analysis on each *Prudential* factor – rather it must address the factors that are relevant to the particular case at hand."). At this preliminary approval stage, only the fourth *Prudential* factor is relevant – whether the class members can opt out. Here, class members are given the choice to opt out of the settlement. This weighs in favor of preliminary approval.

(8)    the range of reasonableness of the settlement fund in light of the best possible recovery; [and]

(9)    the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F. 2d at 157. It is the settling parties' burden to demonstrate that the *Girsh* factors weigh in favor of approving the settlement. *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) (citations omitted).

### i.    The Complexity, Expense, and Likely Duration of Litigation (Factor #1)

The first *Girsh* factor, the complexity, expense, and likely duration of litigation, favors approval. Securities fraud cases are "notably complex, lengthy, and expensive cases to litigate." *Beltran v. Sos Ltd.*, No. 21-cv-7454 (RBK) (EAP), 2023 WL 319895, at *4 (D.N.J. Jan. 3, 2023) *report and recommendation adopted by* 2023 WL 316294 (D.N.J. Jan. 19, 2023) (citations omitted); *In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 WL 9447623, at *17 (D.N.J. Dec. 9, 2008) ("Federal securities class actions by definition involve complicated issues of law and fact.").

Providing settlement class members with a certain result now weighs in favor of settlement. *See In re Ocean Power Technologies, Inc.*, Nos. 14-cv-3799, 14-cv-3815, 14-cv-4592 (FLW), 2016 WL 6778218, at *13 (Nov. 15, 2016) (reasoning that even if the class received a larger judgment following trial, "the additional delay, through summary judgment, trial, post-trial motions, and the appellate process, would deny the [c]lass any recovery for years," and "secures a substantial and certain benefit for the class in [a] highly complex and contested action, undiminished by further expenses, and without the delay, risk, and uncertainty of continued litigation."); *Hacker v. Elec. Last Mile Sols., Inc.*, 722 F. Supp. 3d 480, 499 (D.N.J. 2024) (finding this factor weighed in favor of preliminary approval because securities class actions "are plainly expensive and complex.").

Further, Plaintiffs point out that Defendants are located in China, increasing the complexity and expense of this matter. *See Beltran*, 2023 WL 319895, at *4, (finding that this *Girsh* factor weighed in favor of settlement against a Chinese defendant, explaining that the individual defendants and witnesses resided in China, much of the evidence exists in China, and the Chinese government restricts production of evidence of foreign parties and prohibits depositions on the Mainland, requiring depositions to take place in Hong Kong). The fact that Defendants in this matter are based in China will necessarily complicate this case. Evidence would have to be obtained through the Hague and letter rogatory. Obtaining evidence through this mechanism is cumbersome and lengthy. *See Rabbi Jacob Joseph Sch. V. Allied Irish Banks P.L.C.*, No. 11-cv-5801 (DLI) (VVP), 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012) (noting that obtaining evidence through the Hague is "cumbersome and inefficient, and hardly make litigation in the United States convenient."). This is particularly true with China where the government has imposed restrictions again the production of evidence abroad.

The Court is satisfied the first *Girsh* factor is met in the instant matter. This matter is necessarily complex, and continuing litigation will be expensive and lengthy. This factor therefore weighs in favor of settlement.

### ii.    The reaction of the class to the settlement.

The second factor, the reaction to the settlement, "'attempts to gauge whether members of the class support the settlement,' by considering the number of objectors and opt-outs and the substance of any objections." *Sullivan*, 667 F.3d at 321 (quoting *In re Prudential Ins. Co.*, 148 F.3d at 318. At this stage, it is impossible to know the reaction of the class to the settlement. However, the Court will have this information for the final fairness hearing since the notice provides for both opt-outs and objections. For the present application, however, this factor is neutral.

### iii.   The stage of the proceedings and the amount of discovery to be completed (Factor #3)

The third *Girsh* factor considers the stage of proceedings and quantity of discovery. "This factor considers the degree of case development accomplished by counsel prior to settlement." *Bredbenner v. Liberty Travel, Inc.*, Nos. 09-cv-905, 09-cv-1248, 09-cv-4587 (MF), 2011 WL 1344745, at *12 (D.N.J. April 8, 2011). "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Gen. Motors Corp.*, 55 F.3d at 813.

This case has been pending since June 2023. The parties have not engaged in formal discovery because, pursuant to the PSLRA, discovery is stayed while a motion to dismiss is pending. *See Shapiro v. Alliance MMA, Inc.*, No. 17–cv-2583 (RBK) (AMD), 2018 WL 3158812, at *3 (D.N.J. Jun 28, 2018). However, that does not preclude a finding in favor of this factor. *See Beltran*, 2023 WL 319895, at *4 (finding this *Girsh* factor met where defendant had not filed an answer or dispositive motion, formal discovery did not begin, but plaintiffs "extensively studied the merits of the case by conducting investigations, analyzing SEC filings and analyst reports, reviewing Chinese regulatory filings, retaining a private investigator in China, interviewing former SOS employees, performing site visits, and consulting with an economics expert on damages.")*; Shapiro*, 2018 WL 3158812, at *3 (holding that even though the case was in the early stages of discovery, the parties had an understanding of the relative strengths and weaknesses of their cases and engaged the use of an expert); *P. Van Hove BVBA*, 2017 WL 2734714, at *13 (acknowledging that "although in the early stages of litigation, Lead Counsel has expended many hours through, for example, its investigation in China and opposing numerous motions to dismiss. ")

Here, Plaintiff's brief recited all the work done by counsel to investigate and evaluate the claims in this matter including retaining an expert, hiring an investigator in China and doing

through research and document review. At the request of the Court, Plaintiff's counsel, Jing Chen, Esq. submitted a certification for the Court's in camera review that set forth in explicit detail the extensive work performed to research the claims and evaluate the settlement. Plaintiff's counsel also submitted a detailed certification from the investigator they hired in China for the Court's in camera review. Finally, Plaintiff submitted a declaration from its consulting expert explaining in detail how the value of the class claims was assessed and determined. Without revealing the confidential, attorney work product contained in each of those certifications, the Court is more than satisfied that Plaintiff's counsel did their due diligence in determining that this was a reasonable settlement. In sum, the research and investigation included reviewing DouYu's public filings and press releases, reading hundreds of analysts' reports, reviewing over 1300 news articles on Bloomberg and hundreds more from Chinese news media, conducting legal research on both American and Chinese law, analysis of financial statistics, and review of many other documents. The investigator interviewed multiple DouYu employees to obtain information relevant to the claims and prepared several reports. The expert conducted a detailed and thorough analysis of damages. Thus, although there was no formal discovery, the Court is satisfied that counsel fully researched the claims, conducted a diligent investigation and was educated on the amount of potential damages at stake in this litigation. They had ample information to evaluate the settlement and determine it was a good result for the class members they represent. Accordingly, this factor weighs in favor of preliminary approval.

### iv.    The risks of establishing liability and damages (Factors #4 and #5)

"Courts commonly analyze the fourth and fifth *Girsh* factors together." *Beltran* 2023 WL 319895, at *5 (internal citations omitted). These factors "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an

immediate settlement." *In re Warfarian Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d. Cir. 2004). Establishing liability is "a common risk of securities litigation." *Beltran* 2023 WL 319895, at *5 (quoting *In re AOL Time Warner, Inc.*, No. 02-cv-575 (SWK), 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006)). This inquiry "requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" *In re Safety Components, Inc. Sec. Litig.*, 166 F.Supp. 2d 72, 89 (D.N.J. 2001) (quoting *In re Prudential Ins. Co.*, 148 F.3d at 319.

As already mentioned, much of the evidence is in China in this matter, which complicates Plaintiffs' chance for success on the merits. *Beltran*, 2023 WL 319895, at *5; *See also Dartell v. Tibet Pharm., Inc.*, No. 14-cv-3620 (JMV), 2017 WL 2815073, at *6 (D.N.J. June 29, 2017) (finding this factor weighed in favor of final approval because "[g]athering evidence in China for litigation that is occurring in the United States is a difficult and expensive process."). Simply put, Plaintiff might not be able to obtain the documents and information necessary to ultimately prevail on liability or damages. Indeed, Plaintiffs' counsel references a prior case in which it was involved where, although Plaintiff prevailed on an early motion to dismiss, ultimately had to be withdrawn because the Chinese defendant refused to engage after losing the motion. *Vanderhoef v. China Auto Logistics, Inc. et al.*, No. 2:18-cv-10174 (CCC)(ESK). (ECF No. 62-6). Plaintiffs run the same risk here. While Defendants have voluntarily cooperated in the settlement process thus far, there is risk should the case proceed.

Even if Plaintiffs were to ultimately succeed on the merits, counsel expresses valid concern about their ability to collect on the judgment in China, where U.S. judgments are generally not enforceable. (Pl. Br. at 2, 18-19).

Plaintiffs note that Defendants requested, and were granted, leave to file a motion to dismiss Plaintiffs' complaint, which brings with it additional risk. While Plaintiffs feel confident

in their claims, they point out that Defendants feel equally confident in their defenses and there is always a possibility the motion be granted.

Lastly, Plaintiffs note the difficulty of proving losses in this type of securities litigation. While they submitted a certification from their expert concerning the value of Plaintiffs' claims, they note Defendants would undoubtedly obtain a competing expert of their own to rebut the damages and attribute any loss to market factors wholly independent of the allegations in this litigation. When there a battle of the experts, the amount of damages is never guaranteed. *See In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 146 (D.N.J. 2013) (finding this factor weighed in favor of approval where plaintiffs' "allegations of damages would require a complicated analysis involving sophisticated expert opinions," where defendants would counter with their own expert, resulting in a "battle of the experts."); *Hacker*, 722 F. Supp. 3d at 500 (finding this factor weighed in favor of preliminary approval in a securities class action, where "[S]cienter would be a high and hard bar to clear."); *Dartell*, 2017 WL 2815073, at *6 (finding this factor weighed in favor of approval when loss causation would be reduced to a "battle of the experts" and "[t]he reaction of a jury to such competing expert testimony is impossible to predict.").

Thus, the risks in establishing liability and damages are significant. Comparatively speaking, this settlement ensures the Plaintiffs will obtain roughly 25% of their total loss, a guaranteed recovery in the face of lengthy litigation, the possibility they might not ultimately prevail, and the risk that if they do prevail they might not be able to collect. Accordingly, the Court finds both of these *Gersh* factors weigh in favor of settlement.

### v. The Risks of Maintaining the Class Action Through Trial (Factor #6)

This factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarian*, 391 F.3d at 538. As stated in *In re General Motors*:

> The value of a class action depends largely on the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits. Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action.

55 F. 3d at 817.

This factor is neutral. The class consists of all individuals and entities who purchased ADSs from DouYu during the specified period. In this type of securities litigation, class certification is likely. *See Beltran*, 2023 WL 319895, at *9; *Kanefsky* 2022 WL 1320827, at *6-9. There is no way to ascertain at this point whether Plaintiffs' counsel would be able to maintain the class throughout trial, or whether the class might be decertified. However, there is nothing in the record currently to suggest that there would be decertification here. *See In re PAR Pharm. Secs. Litig.*, No. 06-cv-3226 (ES), 2013 WL 3930091, at *7 (D.N.J. July 29, 2013) ("Although there may be inherent risks in maintaining a class throughout trial, there is nothing in the record to suggest decertification is likely here. The [c]ourt finds that this factor is effectively neutral."); *In re Rent-Way Secs. Litig.*, 305 F. Supp. 2d. 491, 506 (W. D. Pa. 2003) ("Our Court of Appeals has recognized that this exercise is somewhat 'perfunctory,' since the district court always retains the discretion to decertify or modify a class that becomes unmanageable").

Thus, the Court finds this factor to be neutral. Indeed, it is likely the possibility of class certification that allowed Plaintiffs to obtain such a large settlement fund at all. If Defendants' believed class certification was unlikely to be maintained, they would not have offered 25% of the total settlement value to resolve this litigation. There would likely be no issue in obtaining class certification in regular litigation. When there is a legitimate question as to whether or not certification would be granted, this factor is, at best, neutral.

24

### vi.  The ability of Defendants to withstand a greater judgment (Factor #7)

This factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *In re Cendant Corp.*, 264 F.3d 201, 240 (3d Cir. 2001). The Court has little doubt that an entity of Defendants' size could withstand a larger judgment, but – as has repeatedly been recognized within this District under similar circumstances – the relative financial resources of a defendant do not themselves render a settlement unreasonable.  *See, e.g., Oliver v. BMW of N.A., LLC*, No. 17-cv-12979 (CCC) (MF), 2021 WL 870662, at *8 (D.N.J. Mar. 8, 2021); *Yaeger v. Subaru of Am., Inc.*, No. 14-cv-04490 (JBS) (KMW), 2016 WL 4541861, at *11 (D.N.J. Aug. 31, 2016). "[T]he fact that [defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached." *Warfarin*, 391 F.3d at 538. This factor is therefore neutral.

### vii.  The range of reasonableness of the settlement in light of the best possible recovery and all the attendant risks of litigation (Factors #8 and #9)

The final two factors evaluate if the settlement is "a good value for a weak case or a poor value for a strong case." *Id.* (citing *In re Prudential Ins. Co.,* 148 F.3d at 322). These "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* "In order to assess the reasonableness of a proposed settlement seeking monetary relief, 'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.'" *In re Prudential Ins. Co.*, 148 F. 3d at 322 (quoting *In re General Motors*, 55 F. 3d at 806 (quoting Manual for Complex Litigation 2d § 30.44, at 252)).

Here, the settlement fund is $2,250,000, which equals approximately 24.5% of Plaintiffs' "best-case scenario damages." (Pl. Br. at 19). Plaintiffs provide several examples in their brief where the Court approved settlements representing an even lower percentage of the recovery. *See In re Cendant Corp.*, 264 F.3d at 241 (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997), *aff'd sub nom.* 166 F.3d 581 (3d Cir. 1999) (approving settlement for 5.35% of estimated damages, overruling objections, and collecting cases approving "class settlements involving far smaller percentage recoveries"); *Schuler v. Meds. Co.,* 14-cv-1149 (CCC) 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (finding that a 4% recovery fell "squarely within the range of previous settlement approvals"); *P. Van Hove BVBA*, 2017 WL 2734714, at *11 (approving settlement recovering 10% of damages). Even after a potential attorneys' fee award of $750,000 and costs of $100,000 are subtracted from the total settlement fund, Plaintiffs are left with $1,400,000, which is still a 15.7% recovery for the class. This recovery is still a higher percentage of recovery than Courts in this District have approved in securities class actions.

Further, Defendants still maintain they are not liable for any losses in this matter, and if the parties did not come to an agreement, Defendants were prepared to file another motion to dismiss. That means that without this settlement, Plaintiffs would have to defend against a dispositive motion that Defendants believed is meritorious. Even if Plaintiffs succeeded in defeating that motion, they still ran the risk of proceeding through costly discovery, a battle of the experts and trial. Plaintiffs submit that their maximum recovery in this matter is roughly $9.2 million. (Pl. Br. at 2). They provided the court with an expert report for its camera review that provides the basis for this calculation that seems sound.  However, in litigation, Defendants would challenge this calculation with their own experts and might be successful. Considering $9.2 million is Plaintiffs'

best case scenario should they completely prevail at trial, compared with their worst case scenario of $0, this is a fair settlement in light of the circumstances and compared to other securities class action settlements in this district.

### C. The Proposed Notice Plan

Finally, Fed. R. Civ. P. 23 requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal" upon finding that the proposed settlement will likely satisfy the requirements for final approval and the proposed class will meet the requirements for final certification. Fed. R. Civ. P. 23(e)(1)(B). "[F]or classes certified under Rule 23(b)(3), courts must ensure that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *In re Nat'l Football League*, 301 F.R.D. at 202 (citing Fed. R. Civ. P. 23(c)(2)(B); *Amchem*, 521 U.S. at 617.

Due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (citing *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). Rule 23(c)(2)(B) provides that the "notice must clearly and concisely state in plain, easily understood language:

> (i)     the nature of the action;
>
> (ii)    the definition of the class certified;
>
> (iii)    the class claims, issues, or defenses;
>
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
>
> (v)     that the court will exclude from the class any member who requests exclusion;

27

> (vi)    the time and manner for requesting exclusion; and
>
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Additionally, the Securities Act, in provisions added by the PSRLA, imposes certain notice requirements specifically for settlements of securities class actions. *Yedlowski*, 2016 WL 6661336 at *9 (citing 15 U.S.C. § 77z-1). The PSLRA requires that the notice contain the following information:

- Statement of recovery – "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis";

- Statement of potential outcome of case – the amount of damages per share recoverable if the plaintiffs were to prevail on every claim, but, if the parties are unable to agree on damages, "a statement from each settling party concerning the issue or issues on which the parties disagree";

- Statement of attorneys' fees – a statement of fees and costs to be applied for in the aggregate and on an average per-share basis;

- Identification of lawyers' representatives – the name, telephone number, and address of counsel available to answer questions; and

- Reasons for settlement – "[a] brief statement explaining the reasons why the parties are proposing the settlement."

*Id.*; *See also Shapiro*, 2018 WL 3158812, at *7 ("Under the PLSRA, '[a]ny proposed or final settlement agreement that is published" shall include a statement of the class's recovery; a statement on the potential outcome of the case, including the agreed-upon settlement; a statement on attorneys' fees; the identification of the lawyers' representatives; and the reason for the settlement.'") (citing 15 U.S.C. § 78u–4(a)(7)).

Here, the Court finds that the proposed notice satisfies due process and all requirements of Fed. R. Civ. P. 23 and the PLSRA. It states the settlement proposed of $2,250,000. *See* ECF No. 61-2, at 1. It explains the estimated average recovery of $0.045 per damaged DouYu ADS. *Id.* It explains the award could vary based on how many class members participate. *Id.* It explains the attorney's fees and costs that will be sought to come from the settlement fund. *Id.* It states if the maximum fees and costs are recovered, then the average recovery per class member is $0.028 per ADS. *Id.* at 2. It provides contact information for class counsel. *Id.* at 3. It states the nature of the lawsuit. *See* ECF No. 61-2, p. 4, ¶ 2. The class is defined. *See Id.*, ¶ 1. The class claims, issues, and defenses are defined. *See Id.*, p. 4, ¶¶ 2, 4. It states a class member could retain counsel if they choose *See Id.*, p. 11, ¶ 13. It explains that a class member can be excluded and will lists the time and manner for requesting exclusion. *See Id.*, ¶ 11. Finally, it explains the binding effect of class judgment on all members. *See Id.*, p. 10, ¶ 10.

Further, at the request of Court, Plaintiffs submitted a certification from the proposed claims administrator explaining how class members will be identified, the process for notification and what will happen in the event an email or mailing comes back as undeliverable. (ECF No. 76-1). After reviewing this certification, the court is satisfied that the notice is sufficient and the methodology to be employed by the class administrator will ensure the maximum number of class members are notified of the litigation, their rights and the settlement.

## CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**. An accompanying Order follows.

*s/ Stacey D. Adams*
Hon. Stacey D. Adams
United States Magistrate Judge