**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAVID RIGO FERNANDEZ, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DOUYU INTERNATIONAL HOLDINGS LIMITED, SHAOJIE CHEN, AND MINGMING SU, <br><br> Defendants. | Case No. 2:23-cv-03161-SDA <br> *Document Filed Electronically* <br><br> CLASS ACTION <br><br> Motion Day: August 18, 2025 <br><br> Hon. Stacey D. Adams, U.S.M.J. |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR AWARD OF ATTORNEYS' FEES AND**
**REIMBURSEMENT OF LITIGATION COSTS AND EXPENSES**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.   SUMMARY OF FACTUAL AND PROCEDURAL HISTORY ...................8

III.  THE COURT SHOULD APPROVE THE FEE REQUEST .........................9

    A. Lead Counsel are Entitled to an Award of Attorneys' Fees from the Common Fund ................................................................................................9

    B. Application of the *Gunter* and *Prudential* Factors Supports Lead Counsel's Request for a 33⅓% Fee .....................................................................12

        1.    The Size of the Fund Created and the Number of Persons Benefited ................................................................................13

        2.    No Settlement Class Members Have Objected to the Fee Request ...................................................................................................19

        3.    Lead Counsel's Skill and Efficiency Supports the Request .....20

        4.    The Complexity and Duration of the Litigation Support the Request ................................................................................21

        5.    The Risk of Nonpayment Supports the Requested Fee ............24

        6.    Lead Counsel Devoted Significant Time to the Case ...............27

        7.    Attorney Fee Awards in Similar Cases and Privately Negotiated Contingency Fee Contracts Support the Request .....................28

        8.    The Settlement is Solely Attributable to Lead Plaintiffs' and Lead Counsel's Efforts ..........................................................32

        9.    There Are No Unusual Terms in the Settlement ......................33

    C. A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee ................................................................................................33

IV.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED.. ...................................................................................................37

V.    LEAD PLAINTIFFS SHOULD BE GRANTED PSLRA AWARDS..........38

VI.    CONCLUSION....................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ...............................................................................2

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) .............................................................................................10

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ..............................................................................3

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990) ..................................................................................26

*Barnes v. Winking Lizard, Inc.*,
    2019 WL 1614822 (N.D. Ohio Mar. 26, 2019).....................................................27

*Beltran v. Sos Ltd.*,
    2023 WL 319895 (D.N.J. Jan. 3, 2023) ................................................................39

*Bing Li v. Aeterna Zentaris, Inc.*,
    324 F.R.D. 331 (D.N.J. 2018) ..............................................................................20

*Blum v. Stenson*,
    465 U.S. 886 (1984) .............................................................................................10

*Bodnar v. Bank of America, N.A.*,
    2016 WL 4582084 (E.D. Pa. Aug. 4, 2016).................................................... 29, 35

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) .............................................................................................9

*Brown v. Esmor Correctional Servs., Inc.*,
    2005 WL 1917869 (D.N.J. Aug. 10, 2005).........................................................30

*Bryant v. Avado Brands, Inc.*,
  100 F. Supp. 2d 1368 (M.D. Ga. 2000)...................................................................16

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .....................................................18

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ...............................................................................25

*Dartell v. Tibet Pharm., Inc.*,
  2017 WL 2815073 (D.N.J. June 29, 2017) ................................................... 19, 30

*De Vito v. Liquid Holdings Grp., Inc.*,
  2020 WL 9763133 (D.N.J. Jan. 10, 2020) ..........................................................29

*Elkin v. Walter Investment Management Corp.*,
  2018 WL 8951073 (E.D. Pa. Dec. 18, 2018) ................................................. 30, 39

*Fernandez v. DouYu Int'l Holdings Ltd.*,
  2025 WL 972836 (D.N.J. Mar. 31, 2025) ............................................... 20, 23, 24

*Fishoff v. Coty Inc.*,
  2010 WL 305358 (S.D.N.Y. Jan. 25, 2010).........................................................17

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) .................................................................................3

*Goldstein v. MCI WorldCom*,
  340 F.3d 238 (5th Cir. 2003) ...............................................................................25

*Goodman v. UBS Financial Services Inc.*,
  2023 WL 8519092 (D.N.J. Dec. 7, 2023) ............................................................29

*Gross v. GFI Grp., Inc.*,
  784 F. App'x. 27 (2d Cir. Sept. 13, 2019).............................................................17

*Guevoura Fund Ltd. v. Sillerman*,
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019)........................................................38

iv

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000) ................................................................... 9, 11, 21, 33

*Hall v. AT & T Mobility LLC*,
  2010 WL 4053547 (D.N.J. Oct. 13, 2010) .................................................. *passim*

*Hensley v Eckerhart*,
  461 U.S. 424 (1983) ....................................................................................... 13

*In re Am. Bus. Fin. Servs. Inc. Noteholders,*
  *Litig.*, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ......................................... 37

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...................................................... 15

*In re Apple Computer Sec. Litig.*,
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ...................................................... 3

*In re AremisSoft Corp. Sec. Litig.*,
  210 F.R.D. 109 (D.N.J. 2002) .................................................................... 20, 36

*In re AT&T Corp., Sec. Litig.,*
  455 F.3d 160 (3d Cir. 2006) ......................................................................... *passim*

*In re Auto. Refinishing Paint Antitrust Litig.*,
  2008 WL 63269 (E.D. Pa. Jan. 3, 2008) ........................................................ 32

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .................................................. 26

*In re BP p.l.c. Sec. Litig.*,
  852 F. Supp. 2d 767 (S.D. Tex. 2012) ........................................................... 16

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ...................................................................... 11, 18, 33

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005) ....................................................................... 9, 35, 36

*In re Cendant Corp.*,
232 F. Supp. 2d 327 (D.N.J. 2002)............................................................37

*In re Cigna Corp. Sec. Litig.*,
2007 WL 2071898 (E.D. Pa. July 13, 2007) ......................................32

*In re Corel Corp. Inc. Sec. Litig.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003)...................................................21

*In re Datatec Sys., Inc. Sec. Litig.*,
2007 WL 4225828 (D.N.J. Nov. 28, 2007) ..........................................22

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ........................................36

*In re Facebook, Inc., IPO Sec. and Derivative Litig.*,
343 F.Supp.3d 394 (S.D.N.Y. 2018) ....................................................15

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011).............................................................26

*In re Greenwich Pharm. Sec. Litig.*,
1995 WL 251293 (E.D. Pa. Apr. 26, 1995)...........................................29

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ................................................ 9, 16, 36

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
2022 WL 16533571 (E.D. Pa. Oct. 28, 2022) ......................................30

*In re Interpublic Sec. Litig.*,
2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) .........................................7

*In re King Res. Co. Sec. Litig.*,
420 F. Supp. 610 (D. Colo. 1976) .........................................................23

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).......................................39

*In re Mercedes-Benz Emissions,*
   *Litig.*, 2021 WL 7833193 (D.N.J. Aug. 2, 2021) ........................................... 21, 24

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
   2010 WL 547613 (D.N.J. Feb. 9, 2010) ....................................................... 29, 33

*In re Merck & Co., Sec., Derivative & "ERISA"* Litig.,
   2016 WL 11686450 (D.N.J. June 3, 2016) ........................................................13

*In re Ocean Power Tech., Inc., Sec. Litig.,*
   2016 WL 6778218 (D.N.J. Nov. 15, 2016) ........................................................4

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
   2000 WL 1622741 (E.D. Pa. Oct. 23, 2000) ......................................................31

*In re Par Pharm. Sec. Litig.*,
   2013 WL 3930091 (D.N.J. July 29, 2013) ................................................. *passim*

*In re Peanut Farmers Antitrust Litig.*,
   2021 WL 9494033 (E.D. Va. Aug. 10, 2021) ....................................................32

*In re Processed Egg Prods. Antitrust Litig.*,
   2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) .......................................................33

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) .................................................................. 11, 32, 33

*In re Raviscent Techs. Inc. Sec. Litig.,*
   2005 WL 906361 (E.D. Pa. Apr. 18, 2005) .......................................................35

*In re Remeron Direct Purchaser Antitrust Litig.*,
   2005 WL 3008808 (D.N.J. Nov. 9, 2005) ..................................................... 31, 36

*In re Remeron End-Payor Antitrust Litig.*,
   2005 WL 2230314 (D.N.J. Sept. 13, 2005) .......................................................37

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ........................................................... 29, 38

*In re Rite Aid Corp. Sec. Litig.*,
    362 F. Supp. 2d 587 (E.D. Pa. 2005)........................................................36

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ............................................... *passim*

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
    2008 WL 9447623 (D.N.J. Dec. 9, 2008) ..........................................22

*In re Safety Components, Inc. Sec. Litig.*,
    166 F. Supp. 2d 72 (D.N.J. 2001)................................. 15, 35, 37

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
    2013 WL 5505744 (D.N.J. Oct. 1, 2013) ......................................7, 34

*In re Schering-Plough Corp. Sec. Litig.*,
    2009 WL 5218066 (D.N.J. Dec. 31, 2009) .......................................13

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...............................................36

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    724 F. Supp. 160 (S.D.N.Y. 1989) ...................................................34

*In re Vicuron Pharms., Inc. Sec. Litig.*,
    512 F. Supp. 2d 279 (E.D. Pa. 2007)................................................32

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ...................................................10

*Institutionalized Juveniles v. Secretary of Public Welfare*,
    758 F.2d 897 (3d Cir. 1985) .............................................................35

*Johnson v. Community Bank, N.A.*,
    2013 WL 6185607 (M.D. Pa. Nov. 25, 2013)....................................30

*Jones v. Diamond*,
    636 F.2d 1364 (5th Cir. 1981)..........................................................25

*Jorling v. Anthem, Inc.*,
    836 F. Supp. 2d 821 (S.D. Ind. 2011) ...................................................16

*Lea v. Tal Educ. Grp.*,
    2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ...................................35

*Leach v. NBC Universal Media, LLC*,
    2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017) .................................28

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998) .............................................................35

*Lincoln Adventures, LLC v. Those Certain Underwriters At Lloyd's, London
    Members of Syndicates*,
    2019 WL 13159891 (D.N.J. Oct. 3, 2019) ........................................30

*Meijer, Inc. v. 3M*,
    2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ....................................36

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) ................................................32

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) .........................................................................35

*Murray v. Weinberger*,
    741 F.2d 1423 (D.C. Cir. 1984).........................................................35

*Myers v. Jani-King of Philadelphia, Inc.*,
    2019 WL 4034736 (E.D. Pa. Aug. 26, 2019) ....................................30

*Mylan Pharms., Inc. v. Warner Chilcott Public Limited Co.*,
    2014 WL 12778314 (E.D. Pa. Sept. 15, 2014)..................................31

*Neuberger v. Shapiro*,
    110 F. Supp. 2d 373 (E.D. Pa. 2000)................................................30

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
    2017 WL 2734714 (D.N.J. June 26, 2017) .................................. *passim*

ix

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ........................................................................3, 26

*Rowe v. E.I. Dupont De Nemours and Co.*,
2011 WL 3837106 (D.N.J. Aug. 26, 2011) .................................................. 27, 31

*Schering-Plough Corp. Enhance ERISA Litig.*,
2012 WL 1964451 (D.N.J. May 31, 2012) .........................................................24

*Schuler v. The Meds. Co.*,
2016 WL 3457218 (D.N.J. June 24, 2016) ......................................................7, 35

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) ..............................................................................4

*Smith v. Dominion Bridge Corp.*,
2007 WL 1101272 (E.D. Pa. April 11, 2007) .....................................................30

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
2005 WL 1213926 (E.D. Pa. May 19, 2005) ......................................................15

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ......................................................................... 10, 12

*Tellabs, Inc. v. Makor Issues & Rights. Ltd.*,
127 S. Ct. 2499 (2007) .......................................................................................10

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) .............................................................................11

*Varacallo v. Mass. Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005) ............................................................................28

*Varljen v. H.J. Meyers & Co., Inc.*,
2000 WL 1683656 n.2 (S.D.N.Y. Nov. 8, 2000) ................................................38

*Vitiello v. Bed Bath & Beyond Inc.*,
2022 WL 21305086 (D.N.J. June 3, 2022) ................................................. 29, 39

x

*Whiteley v. Zynerba Pharms., Inc.*,
  2021 WL 4206696 (E.D. Pa. Sept. 16, 2021)..........................................................8

*Yedlowski v. Roka Bioscience, Inc.*,
  2016 WL 6661336 (D.N.J. Nov. 10, 2016)............................................. 21, 24, 25

## **Statutes**

15 U.S.C. § 78u-4(a)(4) ................................................................................2, 38

15 U.S.C. § 78u-4(a)(6) ...................................................................................11

Court-appointed Lead Counsel, Glancy Prongay & Murray LLP ("GPM") and The Rosen Law Firm, P.A. ("RLF"; and together with GPM, "Lead Counsel"), respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees and reimbursement of Litigation Expenses.[1]

## I.  INTRODUCTION

Lead Counsel successfully obtained a $2,250,000 non-reversionary, all cash settlement (the "Settlement") for the benefit of the Settlement Class in the above-captioned action (the "Action"). This is a highly favorable result in the face of substantial risks that was the result of Lead Counsel's vigorous, persistent, and skilled efforts. Lead Counsel now respectfully move this Court for an award of attorneys' fees in the amount of 33⅓% of the Settlement Fund (*i.e.*, $750,000, plus interest earned thereon), and reimbursement of $63,270.97 in Litigation Expenses. The Litigation Expenses consist of $53,270.97 in out-of-pocket costs incurred by Lead Counsel while prosecuting the Action, and an aggregate of $10,000 (or $5,000 each) to Court-appointed Lead Plaintiffs Raphael Seiler ("Seiler") and Pedro Reyes

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation of Settlement, dated July 30, 2024 ("Stipulation"; ECF No. 61), or in the concurrently filed Joint Declaration of Phillip Kim and Casey E. Sadler in Support of: (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration"). Citations to "¶__" or "Ex. __" in this memorandum refer to paragraphs in, or exhibits to, the Joint Declaration.

1

("Reyes"; and together with Seiler, "Lead Plaintiffs" or "Plaintiffs"), for reimbursement of the reasonable costs (including the cost of time spent) incurred in prosecuting the Action on behalf of the Settlement Class pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).

As detailed below and in the accompanying Joint Declaration, the Settlement represents an excellent recovery for the Settlement Class. In the absence of the Settlement, the litigation would have been uncertain and likely have continued for many years, through class certification, fact discovery, expert discovery, summary judgment, trial, and likely appeals. Lead Plaintiffs and their counsel faced substantial obstacles in proving liability and damages, yet nevertheless reached a timely and substantial resolution for the Settlement Class.

Achieving the Settlement was not easy. Defendants were represented by highly skilled litigators, and Lead Counsel faced numerous hurdles and risks from the outset, including the PSLRA's heightened pleading standards and automatic stay of discovery, the complex nature of the claims at issue, the high cost of experts and investigators needed to litigate a securities fraud case, and a substantial risk of non-payment. These are not idle risks. "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve*

*Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J. sitting by designation).[2] As

a result, a significant number of cases are dismissed in whole or in part at the outset.

*See* Ex. 6 (excerpts from Edward Flores and Svetlana Starykh, *Recent Trends in*

*Securities Class Action Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025)

("NERA Report")) at 17 (Fig. 15) (61% of decisions on motions to dismiss in

securities class actions granted the motion with or without prejudice, 20% were

partially granted, and 19% were denied).

Nor do the risks end at the pleading stage. Even when a plaintiff is successful

at trial, payment is far from guaranteed. *See Robbins v. Koger Props., Inc.*, 116 F.3d

1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting

firm reversed on appeal on loss causation grounds and judgment entered for

defendant).[3]

The riskiness and expense of this complex action was further exacerbated by

the international dimensions of the case. The conduct at issue took place in China,

---

[2] Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

[3] *See also Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict awarding investors $2.46 billion on loss causation and damages grounds, and remanding for new trial on these issues), *reh'g denied* (July 1, 2015); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1235 (10th Cir. 1996) (overturning securities-fraud class-action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig.*, 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions).

involved complex regulatory issues regarding the livestreaming market, Chinese laws and regulations concerning the dissemination of information on the internet and online gambling, and Defendants and witnesses were located in mainland China. Lead Counsel's investigation and prosecution of the case required, *inter alia*, the use of a bilingual private investigator to conduct an investigation in China, extensive research into Chinese regulatory and criminal law related to content moderation and online gambling, bilingual attorneys, and a thorough understanding of a variety of political, business and legal issues unique to China. ¶7. Lead Counsel also knew that even if Plaintiffs were to prevail at trial, it would be virtually impossible to execute on a judgment against Defendants in China. ¶¶48-49. There was, therefore, a strong possibility that the case would yield little or no recovery after many years of costly litigation. *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits."); *In re Ocean Power Tech., Inc., Sec. Litig.*, 2016 WL 6778218, at \*28 (D.N.J. Nov. 15, 2016) ("The risk of non-payment is especially high in securities class actions, as they are notably difficult and notoriously uncertain.").

Despite facing long odds, Lead Counsel have vigorously pursued this case, working 669.9 hours and advancing $53,270.97 in out-of-pocket expenses, all on a fully contingent basis. Among other things, Lead Counsel:

4

- drafted the initial complaint in the Action;

- drafted motions for the appointment of lead plaintiffs pursuant to the PSLRA, and negotiated a stipulation for the appointment of co-lead plaintiffs and co-lead counsel that the Court subsequently entered;

- conducted a comprehensive investigation of the claims asserted in the Action, which included, among other things: (a) reviewing and analyzing (i) DouYu's U.S. Securities and Exchange Commission ("SEC") filings; (ii) DouYu's public filings with Chinese regulatory agencies and its local provincial offices; (iii) public reports, blog posts, research reports prepared by securities and financial analysts, news and wire articles, and other information available on the internet concerning DouYu, including many published in Mandarin Chinese; (iv) DouYu's quarterly and annual earnings call transcripts; (v) announcements by the Cyberspace Administration of China (the "CAC"); (vi) a publication by Chengdu Intermediate People's Court regarding the outcome of the Shanshanjiu Huwai case; (vii) court filings in a previous securities litigation matter in the U.S. against DouYu; and (vii) other publicly available material concerning DouYu and related entities; (b) retaining and working with a bilingual private investigator who, *inter alia*: (i) conducted numerous interviews of former DouYu employees and other sources of potentially relevant information; (ii) obtained information concerning "Changsha Xiangcun Gansidui" and "Shanshanjiu Huwai," two top streamer groups that were explicitly mentioned in DouYu's 2020–2022 annual reports filed with the SEC; and (iii) identified administrative penalties received by Wuhan DouYu Network Technology Co., Ltd., DouYu's primary operating subsidiary; (c) having relevant documents translated from Chinese to English; and (d) consulting with experts in the fields of loss causation and damages;[4]

- utilized the comprehensive investigation and additional research to draft and file the 67-page, 159-paragraph, Amended Class Action Complaint for Violations of the Federal Securities Laws ("FAC"), which asserted violations of the Securities Exchange Act of 1934 (the "Exchange Act") (ECF No. 39);

---

[4] The Court is respectfully referred to the declarations of (i) Plaintiffs' investigator, and (ii) Jing Chen, Esq., both submitted for *in camera* review, pursuant to the Court's November 13, 2024, letter order (ECF No. 75), for a more expansive explanation of the work of the investigator and the investigation performed by Lead Counsel.

- researched, drafted, and filed an opposition to Defendants' pre-motion letter seeking permission to file a motion to dismiss the FAC;

- reviewed Defendants' motion to dismiss the FAC, continued their investigation, and, in light of the discovery of additional facts, entered into a stipulation with Defendants providing for the filing of a second amended complaint, which the Court granted;

- drafted and filed the 73-page, 175-paragraph, Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("SAC"), which asserted violations of the Exchange Act;

- researched, drafted, and filed an opposition to Defendants' pre-motion letter seeking permission to file a motion to dismiss the SAC;

- engaged in several weeks of arm's-length settlement negotiations with Defendants' Counsel via telephone and email that culminated in the Parties reaching an agreement in principle to settle the Action;

- assisted in the preparation of the Plan of Allocation, which is based on a consulting damages expert report, and ensured that it treated Lead Plaintiffs and all other members of the proposed Settlement Class fairly;

- prepared the initial draft, and negotiated the terms, of the Stipulation (including the exhibits thereto) and the Supplemental Agreement;

- drafted the preliminary approval motion and supporting papers;

- attended the preliminary approval hearing and submitted supplemental papers at the Court's request, including declarations from the Claims Administrator, the private investigator retained by Lead Counsel, and Lead Counsel, as well as research related to attorneys' fees;

- worked with the Court appointed Claims Administrator to provide notice to the Settlement Class; and

- drafted the final approval motion and supporting papers. *See* ¶¶12-30.

As compensation for their significant efforts and achievements on behalf of the Settlement Class, Lead Counsel respectfully request a fee award in the amount of 33⅓% of the Settlement Fund. This request is consistent with fee awards granted in comparable class action settlements, whether considered as a percentage of the

6

Settlement or in relation to a cross-check of Lead Counsel's lodestar. Indeed, the requested fee represents a multiplier of 1.08 on Lead Counsel's lodestar, which is a strong indicator of the reasonableness of the request, and well within—and below— the range of multipliers typically awarded in class actions with substantial contingency risks such as this one. *See Schuler v. The Meds. Co.*, 2016 WL 3457218, at *9-*10 (D.N.J. June 24, 2016) (awarding one-third of $4,250,000 settlement fund, resulting in 3.57 multiplier in case that settled before decision on motion to dismiss); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("In recent years multipliers of between 3 and 4.5 have been common in federal securities cases."); *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *34 (D.N.J. Oct. 1, 2013) ("this very low 1.3 multiplier is well within the parameters allowed by courts throughout the Third Circuit and provides compelling evidence that the requested attorneys' fee is reasonable. Indeed, lodestar multipliers well above 1.3 and up to four are often used in common fund cases.").

Lead Counsel also seek reimbursement of $53,270.97 in out-of-pocket litigation expenses incurred in prosecuting the Action. ¶¶99-102. This amount is below the $60,000 limit on litigation expenses disclosed in the Notice. The expenses are reasonable in amount and were necessarily incurred in the successful prosecution of the Action. Accordingly, they should be approved.

7

Finally, Lead Counsel respectfully request PSLRA awards in the aggregate amount of $10,000 to compensate Lead Plaintiffs for the time and effort they have expended on behalf of the Settlement Class. Ex. 4 ("Seiler Decl."); Ex. 5 ("Reyes Decl."). Lead Plaintiffs took responsibility for, and were actively involved in, the prosecution and settlement of the Action. Seiler Decl., ¶¶4-5; Reyes Decl., ¶¶4-5. "[T]here would be no benefit to the Settlement Class Members if Plaintiffs had not stepped forward and prosecuted this matter to the current resolution." *Whiteley v. Zynerba Pharms., Inc.*, 2021 WL 4206696, at *15 (E.D. Pa. Sept. 16, 2021).

For all the reasons set forth herein, and in the Joint Declaration, Lead Counsel respectfully request that the Court award attorneys' fees of 33⅓% of the Settlement Fund, approve reimbursement of $53,270.97 in out-of-pocket litigation expenses, and grant PSLRA awards of $5,000 to each Lead Plaintiff.

## II.    SUMMARY OF FACTUAL AND PROCEDURAL HISTORY

The Joint Declaration is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a more detailed description of, *inter alia*: the Action's history; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; a summary of the services Lead Counsel provided for the benefit of the Settlement Class; and additional information on the factors that support the fee and expense application, including the lodestar cross-check. ¶¶84-105.

## III.   THE COURT SHOULD APPROVE THE FEE REQUEST

### A.   Lead Counsel are Entitled to an Award of Attorneys' Fees from the Common Fund

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Third Circuit and courts within this circuit have reached the same conclusion. *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 205 (3d Cir. 2005) ("[W]e agree with the long line of common fund cases that hold that attorneys whose efforts create, discover, increase, or preserve a [common] fund . . . are entitled to compensation."); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members.").

Common fund fee awards, such as the 33⅓% of the Settlement Fund requested here, encourage and support meritorious class actions and thus promote private enforcement of, and compliance with, the federal securities laws, as well as representation of those seeking redress for damages inflicted on entire classes of persons. *See, e.g.*, *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (stating that goal of awarding fees from common fund is to "ensur[e] that competent counsel continue to be willing to undertake risky, complex, and novel

9

litigation."); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 750-51 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("Fair awards . . . encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance."). Indeed, the Supreme Court has emphasized that private securities cases, such as this Action, are "an indispensable tool with which defrauded investors can recover their losses – a matter crucial to the integrity of domestic capital markets." *Tellabs, Inc. v. Makor Issues & Rights. Ltd.*, 127 S. Ct. 2499, 2508 n.4 (2007); *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) ("Congress, the Executive Branch, and this Court, moreover, have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission.").

Lead Counsel respectfully submit that the Court should award a fee based on a percentage of the common fund obtained for the Settlement Class, and utilize a lodestar cross-check to confirm that the fee is reasonable. The percentage-of-recovery method is almost universally preferred in common fund cases because it most closely aligns the interests of counsel and the class. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class"); *Sullivan v. DB Invs., Inc.*,

10

667 F.3d 273, 330 (3d Cir. 2011) (the percentage of recovery method "is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure."); *In re AT&T Corp.*, *Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998); *Gunter*, 223 F.3d at 195.

A percentage-of-the-fund fee award is also consistent with the PSLRA, that provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("*Rite Aid I*") ("Consistent with past jurisprudence, the percentage-of-recovery method was incorporated in the Private Securities Litigation Reform Act of 1995."). [5] Indeed, "[f]or the past [three] decade[s], counsel fees in securities litigation have generally been fixed on a percentage basis rather than by the so-called lodestar method." *In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001).

---

[5] *See also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation.").

Use of the percentage method does not, however, render the lodestar irrelevant. The Third Circuit has recommended that the percentage award be "cross-checked" against the lodestar method to ensure its reasonableness. *Sullivan*, 667 F.3d at 330; *see also Rite Aid I*, 396 F.3d 294, at 300 ("we do not believe the [PSLRA] precludes the use of the lodestar method as a check on the percentage-of-recovery calculation."). Of course, a cross-check is just that, and "[t]he lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *AT&T Corp.*, 455 F.3d at 164.

As demonstrated below, Lead Counsel's attorneys' fee request is fair and reasonable. It should, therefore, be approved.

B.    **Application of the *Gunter* and *Prudential* Factors Supports Lead Counsel's Request for a 33⅓% Fee**

In reviewing an attorneys' fee award request in a class action settlement, the Third Circuit looks at a number of factors known as the "*Gunter* factors" and the "*Prudential* factors." *AT&T Corp.*, 455 F.3d at 165. The *Gunter* factors include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id.* at 165. The *Prudential* factors include:

12

(1) the value of benefits accruing to class members attributable to the efforts of Lead Counsel as opposed to the efforts of other groups, such as government agencies conducting investigations, (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, and (3) any "innovative" terms of settlement.

*Id*. Analysis of the relevant factors supports the requested award.[6]

### 1. The Size of the Fund Created and the Number of Persons Benefited

"The first *Gunter* factor analyzes the size of the fund created and the number of persons benefitted." *Hall v. AT & T Mobility LLC*, 2010 WL 4053547, at *16 (D.N.J. Oct. 13, 2010). The sufficiency of the result achieved is a primary factor in assessing the propriety of an attorney fee award. *Hensley v Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"); *In re Schering-Plough Corp. Sec. Litig.*, 2009 WL 5218066, at *6 (D.N.J. Dec. 31, 2009) (finding this factor "[m]ost important"); *In re Merck & Co., Sec., Derivative & "ERISA" Litig.*, 2016 WL 11686450, at *8 (D.N.J. June 3, 2016) ("The size of the fund is indicative of the success obtained through a settlement, and, accordingly, a significant consideration in evaluating the reasonableness of an award for attorneys' fees."). Of course, "[a] smaller fund does not necessarily equate to a smaller

---

[6] In application, it is well-established that "courts may give some of these [*Gunter/Prudential*] factors less weight in evaluating a fee award." *Id.* at 166.

percentage award." *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, 2017 WL 2734714, at \*11 (D.N.J. June 26, 2017). In fact,

> because of fixed costs and economies of scale, attorneys' fees and costs do not increase dollar-for-dollar with the size of the case. Thus, it takes a greater percentage of the settlement to support litigation in a smaller case.

*Id.*

Here, the result achieved—a Settlement Amount of $2.25 million—is an excellent outcome that will provide Settlement Class Members with an immediate cash recovery, while avoiding the substantial expense, delay, risk, and uncertainty of further litigation. Plaintiffs' damages expert estimates that if Plaintiffs had ***fully prevailed*** against Defendants' motion to dismiss, at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory, including proof of loss causation as to each of the stock price drop dates alleged in this case (*i.e.*, Lead Plaintiffs' ***best case scenario***), the estimated total ***maximum*** class wide damages would be approximately $9.2 million. Thus, the $2.25 million Settlement Amount represents approximately 24.5% of the total ***maximum*** damages ***potentially*** available. Such a recovery compares favorably with those in similar complex class litigation. *See* Ex. 6 (NERA Report, at 26 (Fig. 23), 27 (Fig. 24)) (between January 2015-December 2024 the median of settlement value as a percentage of "NERA-

14

Defined Investor Losses" was 24% for securities class actions with estimated losses under $20 million, and 1.2% for all securities class actions in 2024).[7]

To fully appreciate the Settlement, however, it must be evaluated in light of the procedural and substantive hurdles that Lead Plaintiffs would have to overcome, in order to prevail in this complex securities fraud litigation. *See In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 343 F.Supp.3d 394, 414 (S.D.N.Y. 2018) ("Because Plaintiffs face serious challenges to establishing liability, consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery."). Obstacles included both the well-known general risks of complex securities litigation, as well as the specific risks inherent in this case. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation" and that "[t]he risk of establish damages [is] equally daunting.").

From the outset, there existed a very real possibility that the Court would dismiss the Action pursuant to the PSLRA's stringent pleading standards and

---

[7] *See Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, 2005 WL 1213926, at *9, *17 (E.D. Pa. May 19, 2005) (recovery of approximately 11.4% of total damages as an "excellent result"); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 97 (D.N.J. 2001) (describing "$4,500,000 settlement, which constituted approximately thirty percent of the best-case scenario damages calculated by Plaintiffs' Counsel" as a "seemingly excellent result").

automatic discovery stay of discovery that could prevent Plaintiffs from obtaining the evidence needed to successfully plead their claims. *See Jorling v. Anthem, Inc.*, 836 F. Supp. 2d 821, 831 (S.D. Ind. 2011) (discussing the PSLRA's "heightened pleading requirements, making it more difficult for plaintiffs to survive a motion to dismiss, and thus receive the keys to unlock the discovery process.").[8] Indeed, Defendants had twice asked for, and received, permission to file a motion to dismiss. ECF Nos. 40-42, 51-53. There was, therefore, a significant chance that this case would not progress past the pleading stage. *See In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading."); *see also* Ex. 6 (NERA Report) at 17 (Fig. 15) (statistics on motions to dismiss in securities class actions).

Nor did the risks end at the pleading stage. Lead Counsel faced significant hurdles in ***proving*** liability and damages. For example, Defendants forcefully argued in their letters seeking permission to file motions to dismiss, and would continue to maintain at summary judgment and trial, that Plaintiffs failed to allege any

---

[8] *See also Ikon*, 194 F.R.D. at 194 ("[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA."); *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000) ("An unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard."), *rev'd on other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).

actionable misstatements or omissions. *See* ECF Nos. 40, 51. While Plaintiffs firmly believe the SAC adequately alleged actionable misstatements and omissions (*see* ECF No. 52), falsity was still an open question, and the trier of fact could have sided with Defendants at any stage of the litigation. *See Gross v. GFI Grp., Inc.*, 784 F. App'x. 27, 29 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment on the alternative ground that Defendant's "statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b)," despite the trial court *twice* finding the statement actionable).

Defendants would also have continued to vigorously dispute that they had acted with scienter (*see* ECF Nos. 40, 51), an element commonly regarded as the most difficult to prove in a securities fraud action. *See Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[t]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim."). For example, Defendants asserted, *inter alia*, that: (i) Plaintiffs failed to plead particularized facts giving rise to the requisite inference of scienter as required under the PSLRA; (ii) generic corporate motives like seeking to grow revenues are insufficient to plead scienter; and (iii) allegations related to Defendant Chen's detention and arrest by Chinese authorities failed to explain how the underlying misconduct related to the alleged misstatements. *See* ECF No. 51. Although Plaintiffs strongly disagreed with Defendants' arguments (*see* ECF No. 52), there is no question that the issue would

17

have been contested on the pleadings, and at summary judgment, trial and on appeal. *See Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *12 (S.D.N.Y. Oct. 16, 2019) ("Proving scienter is hard to do.").

Moreover, Defendants would have contested loss causation and damages, arguing, *inter alia*, that Plaintiffs could not establish those elements and, even if they could, damages would be minimal. ¶43. While Plaintiffs believed that they had meritorious arguments in response, the outcome would rely heavily on expert testimony, and if Defendants' arguments were accepted by the Court or a jury, the Settlement Class's maximum potential damages would have been substantially reduced, if not completely eliminated. ¶45; *Cendant Corp.*, 264 F.3d at 239 ("[E]stablishing damages at trial would lead to a battle of experts with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").[9] Given the range of possible results in this litigation—including no recovery at all—the Settlement constitutes a considerable achievement and weighs heavily in favor of the requested attorneys' fee award.

It is also important to recognize that the Settlement will benefit a significant number of investors. Notice was mailed or emailed to 35,372 potential Class Members, and there is no right of reversion. *See* Declaration of Sarah Evans ("Evans

---

[9] *See also*, *infra*, Sec. III.B.5 (discussing risks of litigating against Chinese company).

Decl."), Ex. 1 at ¶¶4-8; *see also* Stipulation, ¶2.5. The entire Net Settlement Fund will be distributed to Class Members who submit valid claims. Thus, the size of the fund and the number of persons benefitted support approving the requested fee. *See, e.g., Universal Travel,* 2017 WL 2734714, at *11 (approving award of one-third of $4.5 million fund, where "total maximum damages [were] optimistically valued at approximately $45 million"; and settlement benefited approximately 1,130 class members, as measured by expected valid claims received).

### 2. No Settlement Class Members Have Objected to the Fee Request

The reaction of the Settlement Class to the requested fee is also important. Courts consider "the presence or absence of substantial objections by members of the class to the settlement and/or fees requested by counsel." *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *9 (D.N.J. July 29, 2013).

While the deadline for objections is not until July 28, 2025, and thus has not yet passed, there have been no objections to the request for attorneys' fees and Litigation Expenses included in the Notice.[10] ¶¶72, 105; Evans Decl. ¶14. "[T]he absence of substantial objections by class members to the fee requests weigh[s] in favor of approving the fee request." *Rite Aid I*, 396 F.3d at 305; *Dartell v. Tibet Pharm., Inc.*, 2017 WL 2815073, at *9 (D.N.J. June 29, 2017) ("To date, no class

---

[10] Any objections or requests for exclusions received after the date of this submission will be addressed in the reply brief to be filed by August 11, 2015.

19

member has objected to the requested fees. Accordingly, the reaction from the class supports the fee request.").

### 3. Lead Counsel's Skill and Efficiency Supports the Request

The skill and efficiency of counsel is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Hall,* 2010 WL 4053547, at *19.

As explained in the Joint Declaration and herein, Lead Counsel's efforts have resulted in substantial recovery, especially given the risks posed by further litigation and the international dimensions of the case. *See In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 132 (D.N.J. 2002) ("[T]he excellent result evidences Plaintiffs' Counsel's skill and efficiency."). Moreover, Lead Counsel are experienced securities class action litigators, including against Chinese issuers (*see* Ex. 2-C (GPM firm résumé); Ex. 3-C (RLF firm résumé)), and the Court had the opportunity to observe Lead Counsel's abilities in the course of preliminarily approving the Settlement. Indeed, the Court has already found that "the Rosen Law Firm and GPM, are well-experienced and knowledgeable in the area of class action securities litigation." *Fernandez v. DouYu Int'l Holdings Ltd.*, 2025 WL 972836, at *6 (D.N.J. Mar. 31, 2025). Other courts have held similarly. *See e.g., Bing Li v. Aeterna Zentaris, Inc.*,

20

324 F.R.D. 331, 346 (D.N.J. 2018) (finding that GPM and RLF "have extensive experience in securities litigation and have demonstrated competency in litigating the present matter.").

"The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by Lead Counsel." *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016). Defendants were vigorously represented by experienced and able counsel from Davis Polk & Wardwell LLP and Gibbons P.C., very prominent firms with ample resources and skill. Lead Counsel's ability to obtain a favorable outcome for the Settlement Class "in the face of formidable legal opposition further evidences the quality of their work." *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 496 (E.D. Pa. 2003); *In re Mercedes-Benz Emissions Litig.*, 2021 WL 7833193, *13 (D.N.J. Aug. 2, 2021) ("The competence of opposing counsel favors a finding that Class Counsel prosecuted this case with skill and efficiency."). Accordingly, "this factor strongly weighs in favor of approving the fee request." *Par Pharm.*, 2013 WL 3930091, at *9.

### 4. The Complexity and Duration of the Litigation Support the Request

The fourth *Gunter* factor is "the complexity and duration of the litigation." *Gunter*, 223 F.3d at 195 n.1; *see also Universal Travel*, 2017 WL 2734714, at *12 ("The fourth factor captures the probable costs, in both time and money of continued litigation."). Numerous courts recognize that "securities fraud class actions are

notably complex, lengthy, and expensive cases to litigate." *Par Pharm.*, 2013 WL 3930091, at *10; *In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 WL 9447623, at *17 (D.N.J. Dec. 9, 2008) ("Federal securities class actions by definition involve complicated issues of law  and fact."). This Action was no exception.

In addition to the normal difficulties involved in prosecuting a securities class action under the PSLRA,[11] this case involved: (a) years of litigation; (b) complicated regulatory issues regarding the livestreaming market and Chinese laws and regulations concerning the dissemination of information on the internet and online gambling; (c) Defendants and witnesses located in China; (d) the need to engage a bilingual investigator in China; (e) extensive consultation with an expert in the fields of loss causation and damages; (f) the drafting of multiple complaints as a result of a changing factual landscape; (g) two rounds of pre-motion to dismiss submissions; (h) weeks of settlement negotiations with extremely sophisticated defense counsel; and (i) multiple submissions to the Court in conjunction with preliminary approval, including several declarations filed *in camera*; all of which added to the complexity. *Universal Travel*, 2017 WL 2734714, at *7 (noting that "this case has an additional

---

[11] *See In re AT&T*, 455 F.3d at 170 (noting that "the difficulty of proving actual knowledge under §10(b) of the Securities Exchange Act . . . weighed in favor of approval of the fee request."); *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *4 (D.N.J. Nov. 28, 2007) (commenting on the "formidable task of proving scienter and loss causation" and the risk to proving damages in a securities class action).

22

degree of difficulty because much of the relevant evidence is likely located in China" and that "[g]athering evidence in [a foreign country] for litigation that is occurring in the United States is a difficult and expensive process."); *see also DouYu*, 2025 WL 972836, at *9 ("The fact that Defendants in this matter are based in China will necessarily complicate this case."). Thus, even for a securities class action, this case was extremely complex. Had Lead Counsel not devoted the necessary resources and attention to the difficult questions raised in the Action, they would not have prevailed. *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 632 (D. Colo. 1976) (securities litigation presents "unique and substantial issues of law in the technical area of SEC Rule 10b-5 . . . difficult, complex, and oft-disputed class action questions, and difficult questions regarding computation of damages.").

Moreover, in the absence of the Settlement, the litigation would inevitably involve substantially more time and money—for pre-trial motions (including dismissal, class certification and summary judgment), fact and expert discovery, trial, post-trial motions, and the appellate process—which would have necessitated thousands of additional attorney hours, extensive use of judicial resources, and hundreds of thousands of more dollars. Consequently, by reaching the Settlement, Lead Counsel has obtained "a substantial benefit undiminished by further litigation expenses, without the delay, risk and uncertainty of continued litigation." *In re Computron Software, Inc.*, *Sec. Litig.,* 6 F. Supp. 2d 313, 318 (D.N.J. 1998). Under

23

such circumstances, the "Complexity and Duration" factor plainly weighs in favor of the requested fee. *See Universal Travel*, 2017 WL 2734714, at \*12 ("In light of the potential length, [and] the likely additional costs of this securities class action … a one-third fee is reasonable."); *DouYu*, 2025 WL 972836, at \*9 ("This matter is necessarily complex, and continuing litigation will be expensive and lengthy.").

### 5.    The Risk of Nonpayment Supports the Requested Fee

"Courts in the Third Circuit have consistently recognized that the attorneys' contingent fee risk is an essential factor in determining a fee award." *Mercedes-Benz*, 2021 WL 7833193, at \*14; *see also Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at \*7 (D.N.J. May 31, 2012) ("Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval." (collecting cases)); *Yedlowski*, 2016 WL 6661336, at \*21 ("Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees.").

Here, Lead Counsel undertook this class action on a *fully* contingent basis. ¶90. Thus, for over two years, Lead Counsel carried both the substantial out-of-pocket costs of litigation and the risk of not being paid for their services. Contingency risk alone is a factor supporting the requested fee. This is because "[l]awyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation

24

regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 138 (5th Cir. 1981) overruled on other grounds by *Int'l Woodworkers of Am., AFL-CIO & its Local No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 117 (5th Cir. 1986); *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) ("[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success."); *Hall*, 2010 WL 4053547, at *20.

Further, the risk of loss in this case was not illusory. Securities fraud cases are extremely complicated, subject to the heightened pleading standard and automatic stay of discovery of the PSLRA, and success is never assured. *See Yedlowski*, 2016 WL 6661336, at *21 ("The risk of non-payment is especially high in securities class actions, as they are notably difficult and notoriously uncertain."); *Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud class action complaint against Bernard Ebbers and WorldCom arising out of a massive securities fraud that resulted in a $685 million write-off of accounts receivable, for which Ebbers was later convicted). This case was no different. Lead Counsel faced significant pleading challenges, as well as the substantial risks of establishing liability and damages. *See* ¶¶31-47; Lead Plaintiffs' Memorandum in Support of Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation, Sec. III.C.1; *see also Par Pharm.*, 2013 WL

25

3930091, at *10. Had Lead Plaintiffs won at trial, there was still the risk of loss on post-trial motions and appeal. *See Robbins*, 116 F.3d at 1446, 1449 (reversing judgment in plaintiffs' favor and entering judgment in favor of defendant).[12]

It is also important to note that even if Lead Plaintiffs ultimately prevailed after several more years of litigation, collecting on a judgment was not guaranteed. DouYu has few, if any, assets in the U.S., and Chinese courts generally do not enforce U.S. court judgments. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 161 (S.D.N.Y. 2011) ("Finally, even assuming a plaintiffs' verdict, obtaining a recovery would likely have been uncommonly difficult and time-consuming, as counsel have explained that this litigation could face unique delays because defendant Giant has no assets outside of China, and any judgment obtained in the United States would have been of uncertain enforceability overseas."); *see also* ¶¶48-49. Moreover, it is very possible that Defendants could stop engaging in the litigation, leaving Lead Plaintiffs and DouYu investors with no recourse. ¶¶51-54. In addition, DouYu is a variable interest entity ("VIE"), which brings additional risk to the litigation. In a VIE, the U.S.-listed company (here, a Cayman Islands

---

[12] *See also In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting judgment as a matter of law for defendants after jury returned verdict for plaintiffs), *aff'd sub nom.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for judgment N.O.V. was denied; on appeal, the judgment was reversed and the case was dismissed – after 11 years of litigation).

corporation) has a contractual interest in a Chinese company, but does not actually have any ownership or equity interest the Chinese company. ¶55. As the SEC has warned investors with respect to VIEs, "the U.S.-listed company may lose over the China-based company, and investments in its securities may suffer significant economic losses." *Id*.

Despite the risk that Lead Counsel's significant commitment of time, money and effort could go uncompensated, Lead Counsel vigorously prosecuted the Settlement Class's claims, never wavering in their commitment to the case. Consequently, this factor weighs in favor of approving Lead Counsel's fee request. *Rowe v. E.I. Dupont De Nemours and Co.*, 2011 WL 3837106, at *20-*21 (D.N.J. Aug. 26, 2011) (finding this factor supported the requested fee where counsel diligently prosecuted claims despite the risk that counsel's significant time and efforts could go uncompensated); *Barnes v. Winking Lizard, Inc.*, 2019 WL 1614822, at *5 (N.D. Ohio Mar. 26, 2019) ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless there was a recovery, and should be compensated for that risk.").

### 6.    Lead Counsel Devoted Significant Time to the Case

Lead Counsel have expended 669.9 hours and advanced $53,270.97 in out-of-pocket expenses on this case. ¶83. These numbers reflect Lead Counsel's commitment to vigorously pursuing this Action for the benefit of Lead Plaintiffs and

27

the Settlement Class. Furthermore, additional time and resources will necessarily be expended assisting Settlement Class Members with their Proof of Claim forms, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion, and filing a distribution motion. No additional compensation will be sought for this work. Accordingly, this factor supports approval of the requested attorney fees. *See Leach v. NBC Universal Media, LLC*, 2017 WL 10435878 at ¶49 (S.D.N.Y. Aug. 24, 2017) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for the time that they will be required to spend administering the settlement going forward, also supports their fee request."); *Varacallo v. Mass. Mut. Life Ins. Co.,* 226 F.R.D. 207, 253 (D.N.J. 2005) (this factor supports a fee award where the "requested fee is the total fee Class Counsel will receive, despite the continuing responsibilities Class Counsel will have in responding to Class Member inquiries, assisting the Claim Evaluator, consulting on individual cases, and any post-judgment proceedings and appeals.").

> **7.    Attorney Fee Awards in Similar Cases and Privately Negotiated Contingency Fee Contracts Support the Request**

With respect to the final *Gunter* factor, "the court must (1) compare the award requested with other awards in comparable settlements; and (2) ensure that the award is consistent with what the attorney would have received had the fee been negotiated

28

on the open market." *Hall*, 2010 WL 4053547, at *21.[13] As to the first prong of the inquiry, courts within the Third Circuit, including the District of New Jersey, routinely award fees of 33⅓% of the recovery, even in cases involving much larger settlement funds. *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (review of 289 settlements demonstrates "average attorney's fee percentage [of] 31.71%" with a median value that "turns out to be one-third"); *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) (awarding 33⅓% of $41,500,000 settlement fund, noting that "awards in similar common fund cases appear analogous" and award was "consistent with other similar cases"); *Bodnar v. Bank of America, N.A.*, 2016 WL 4582084, at *5 (E.D. Pa. Aug. 4, 2016) (awarding 33% of $27.5 million settlement fund and "find[ing] that an award of 33% of the Settlement Fund is consistent with similar awards throughout the Third Circuit."); *Goodman v. UBS Financial Services Inc.*, 2023 WL 8519092, at *1 (D.N.J. Dec. 7, 2023) (awarding 33⅓% of $2.5 million settlement fund); *De Vito v. Liquid Holdings Grp., Inc.*, 2020 WL 9763133, at *1-*2 (D.N.J. Jan. 10, 2020) (awarding one-third of $4,062,500 settlement); *Vitiello v. Bed Bath & Beyond Inc.*, 2022 WL 21305086, at *8 (D.N.J. June 3, 2022) (awarding 33⅓% of $7 million settlement); *In re Greenwich Pharm. Sec. Litig.,* 1995 WL 251293

---

[13] The second prong of this *Gunter* factor is substantially similar to the second *Prudential* factor. *See AT&T Corp.*, 455 F.3d at 165 (listing factors).

(E.D. Pa. Apr. 26, 1995) (awarding one-third of $4,375,000 settlement); *Universal Travel*, 2017 WL 2734714, at *12 (awarding one-third of $4,075,000 settlement); *Elkin v. Walter Investment Management Corp.*, 2018 WL 8951073, at *1-2 (E.D. Pa. Dec. 18, 2018) (awarding 33⅓% of $2,950,000 settlement); *Brown v. Esmor Correctional Servs., Inc.*, 2005 WL 1917869, at *14 (D.N.J. Aug. 10, 2005) (awarding one-third of $2,500,000 settlement); *Neuberger v. Shapiro*, 110 F. Supp. 2d 373 (E.D. Pa. 2000) (awarding 33⅓% of $1,500,000 settlement); *Smith v. Dominion Bridge Corp.*, 2007 WL 1101272, at *10 (E.D. Pa. April 11, 2007) (awarding 33.33% of $750,000 settlement).[14]  In particular, "[f]or smaller securities fraud settlements," attorneys' fees awarded typically ranges from "30% to 35% of the recovery, plus expenses." *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2022 WL 16533571, at *11 (E.D. Pa. Oct. 28, 2022); *Tibet Pharms.*, 2017 WL 2815073, at *10.

---

[14] *See also* Ex. 7 (collecting cases); *Lincoln Adventures, LLC v. Those Certain Underwriters At Lloyd's, London Members of Syndicates*, 2019 WL 13159891, at *1 (D.N.J. Oct. 3, 2019) (awarding one-third of $21,900,000 settlement fund and stating "the amount of attorneys' fees is consistent with awards in similar cases"); *Johnson v. Community Bank, N.A.*, 2013 WL 6185607, at *8 (M.D. Pa. Nov. 25, 2013) ("An award of one-third of the settlement is consistent with this Court's prior decisions and with cases decided throughout the Third Circuit."); *Myers v. Jani-King of Philadelphia, Inc.*, 2019 WL 4034736, at *11 (E.D. Pa. Aug. 26, 2019) ("the requested fee of one-third (1/3) of the settlement amount is reasonable in comparison to awards in other cases.").

30

Empirical research is in accord. A statistical review of all PSLRA settlements from 2015 to 2024 reveals that 33% is the median fee award in cases with recoveries of less than $5 million. Ex. 6 (NERA Report) at 30 (Fig. 27).

"The requested fee of 33⅓% is also consistent with a privately negotiated contingent fee in the marketplace." *Hall,* 2010 WL 4053547, at *21. "Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation." *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 2000 WL 1622741, at *7 (E.D. Pa. Oct. 23, 2000) (noting that "plaintiffs' counsel in private contingency fee cases regularly negotiate agreements providing for thirty to forty percent of any recovery."); *Rowe,* 2011 WL 3837106, at *22 (awarding 33⅓% as "consistent with a privately negotiated contingent fee in the marketplace"); *Mylan Pharms., Inc. v. Warner Chilcott Public Limited Co.*, 2014 WL 12778314, at *7 (E.D. Pa. Sept. 15, 2014) (approving award of one-third of $15 million settlement and stating: "a one-third contingency is standard in individual litigation; in antitrust litigation, a higher contingency would be reasonable, given the complexities and risks involved.").

Thus, the requested fee award is strongly supported by both subparts of the final *Gunter* factor, and second *Prudential* factor.

### 8.    The Settlement is Solely Attributable to Lead Plaintiffs' and Lead Counsel's Efforts

The Third Circuit advised district courts to examine "the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations." *AT&T Corp.*, 455 F.3d at 165 *citing Prudential*, 148 F.3d at 338. This is because the risk is not uniform in all class actions, and the risk of nonpayment is higher in cases where there has been no government action. *In re Peanut Farmers Antitrust Litig.*, 2021 WL 9494033, at *3 (E.D. Va. Aug. 10, 2021).[15] In the instant case, there was no SEC or DOJ investigation, and no civil or criminal charges were filed. Rather, "Plaintiffs' counsel (and their teams and experts) were truly the authors of the favorable outcome for the class." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015); *In re Cigna Corp. Sec. Litig.*, 2007 WL 2071898, at *6 (E.D. Pa. July 13, 2007) (awarding requested fee and stating: "[f]urthermore, Plaintiffs and class counsel accomplished this result without any prior investigation or involvement by an agency of the United States, such as the U.S. Attorney's Office or the Securities & Exchange Commission, and had to perform all the work, including detailed investigation and review of documents."); *In re Vicuron Pharms.,*

---

[15] *See also In re Auto. Refinishing Paint Antitrust Litig.*, 2008 WL 63269, at *5 (E.D. Pa. Jan. 3, 2008) ("The risk of nonpayment is even higher when a defendants' *prima facie* liability has not been established by the government in a criminal action" and thus "warrants approval" of class counsel's one-third fee request.).

32

*Inc. Sec. Litig.*, 512 F. Supp. 2d 279, 287 (E.D. Pa. 2007) (requested fee supported by the fact that "[n]o agency of the United States, including the Securities and Exchange Commission, conducted any investigation of this matter and so class counsel had to perform all the work.").

### 9.    There Are No Unusual Terms in the Settlement

The terms of the Settlement, providing a monetary benefit to the Settlement Class in return for releases, are otherwise standard, and thus, "neither weighs in favor nor detracts from a decision to award attorneys' fees." *In re Processed Egg Prods. Antitrust Litig.*, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012); *In re Merck & Co.*, 2010 WL 547613, at *12 (finding factor neutral when no innovative terms are highlighted).

Accordingly, the *Gunter* and *Prudential* factors strongly favor approving the fee request.

### C.    A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

While not required, a court may "cross-check the percentage award at which [it] arrive[s] against the 'lodestar' award method[.]" *Gunter*, 223 F.3d at 195 n.1; *see also Prudential*, 148 F.3d at 333; *In re Cendant Corp. Litig.*, 264 F.3d 201, 221 (3d Cir. 2001); *AT&T*, 455 F.3d at 164. "The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method." *Rite Aid I*, 396

F.3d at 306. "Conversely, where the ratio of the [percentage-of-recovery] to the lodestar is relatively low, the cross-check can confirm the reasonableness of the potential award under the [percentage] method." *Schering-Plough Corp.*, 2013 WL 5505744, at \*33.

In "cross-checking" the percentage of recovery award against the lodestar, the Third Circuit has emphasized that the calculation is "not a full-blown lodestar inquiry" and need not entail "mathematical precision" or "bean-counting." *AT&T*, 455 F.3d at 169, n.6 (*quoting Rite Aid I*, 396 F.3d at 306); 455 F.3d at 164 ("The lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method."). Accordingly, "the district court[] may rely on summaries submitted by [counsel] and need not review [] billing records." *Rite Aid I*, 396 F.3d at 306-07.

Here, application of a lodestar cross-check confirms that the requested 33⅓% fee is fair and reasonable. Lead Counsel devoted an aggregate total of 669.9 hours to the prosecution and resolution of this Action. ¶¶11, 84. Lead Counsel's collective lodestar—which is derived by multiplying their hours spent on the litigation by each firm's current hourly rates for attorneys, paralegals and other professional support staff—is $696,333.00. [16] ¶83. Thus, the requested 33⅓% fee, which equates to

---

[16] Courts have approved the use of current rates in the lodestar calculation to "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724

$750,000 (plus interest on that amount at the same rate as earned by the Settlement Fund), represents a multiplier of approximately 1.08 on counsel's lodestar.[17] ¶86.

The multiplier is a strong indicator of the fairness of the requested fee because it demonstrates that counsel is requesting a fee on the lower end of the range courts normally grant. *See AT&T*, 455 F.3d at 173 ("[W]e approved of a lodestar multiplier of 2.99 in *Cendant PRIDES*, in a case we stated 'was neither legally nor factually complex'" and that settled in 4 months); *In re Raviscent Techs. Inc. Sec. Litig.,* 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ("Lodestar multiples of less than four are well within the range awarded by courts in this Circuit."); *Schuler*, 2016 WL 3457218, at *9-*10 (awarding one-third of settlement fund, resulting in 3.57 multiplier ***in case that settled before decision on motion to dismiss***); *Bodnar*, 2016 WL 4582084, at

---

F. Supp. 160, 163 (S.D.N.Y. 1989); *see also Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *In re Safety Components, Inc. Sec. Litig.*, 166 F.Supp.2d 72, 103, n. 11 (D.N.J. 2001) ("calculating the lodestar of Plaintiffs' Counsel using current hourly rates is appropriate."); *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 923 & n. 41 (3d Cir. 1985) ("using current market rates to calculate the lodestar figure may counterbalance the delay in payment as well as simplify the task for the district court" (quoting *Murray v. Weinberger*, 741 F.2d 1423, 1433 (D.C. Cir. 1984))); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("current rates, rather than historical rates, should be applied in order to compensate for the delay in payment"). Additionally, Lead Counsel's rates for attorneys on this Action range from $1,050 to $1,400 for partners, and $550 to $975 for non-partners (¶87), and "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021); *see also* Ex. 8 (chart of rates charged by peer plaintiff and defense counsel in complex litigation). Indeed, defense firm rates, gathered from bankruptcy court filings nationwide, often exceed these rates. *See id*.

[17] $750,000.00 / $696,333.00 = 1.08.

*6 (awarding 33% of $27.5 million settlement fund that resulted in a multiplier of 4.69, and finding "that the multiplier is appropriate and reasonable, including when compared to awards in other cases in this court and Circuit."); *In re Cendant Corp. Sec. Litig.,* 404 F.3d at 183 n.4 (noting that the fee award challenged on appeal "would appear to lead to a multiplier in the mid-single digits," and then affirming the award without further discussion of the multiplier).[18]

Moreover, additional hours will be expended, *inter alia*, overseeing the claims process and drafting and filing a distribution motion. Because no additional compensation will be sought for this work, the multiplier will decrease by the time the Action concludes. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a

---

[18] *See also, Ikon*, 194 F.R.D. at 195 (awarding 2.7 multiplier and noting that it was "well within the range of those awarded in similar cases"); *Meijer, Inc. v. 3M*, 2006 WL 2382718, at *24 (E.D. Pa. Aug. 14, 2006) (approving a percentage fee award that translated to a 4.77 multiplier in case that settled after one year); *Remeron*, 2005 WL 3008808, at *47-48  (multiplier of 1.8 is on the "low end of the spectrum"); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (approving percentage fee award that equated to a 6.96 multiplier); *AremisSoft*, 210 F.R.D. at 135 (awarding percentage of the fund equating to 4.3 multiplier); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.").

36

conclusion that a 33% fee award in this matter is reasonable."). *A fortiori*, the lodestar cross-check confirms the reasonableness of the requested attorneys' fees.

## IV.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

"'Counsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case.'" *Universal Travel*, 2017 WL 2734714, at *13 (quoting *In re Cendant Corp.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002)).

Here, Lead Counsel expended $53,270.97 in out-of-pocket costs. *See* ¶¶99-102; Ex. 2-B and Ex. 3-B. These Litigation Expenses are well-documented, based on the books and records maintained by Lead Counsel, and reflect the costs of prosecuting this Action. *Id.* They include, among other things: expert and investigator fees; online legal and factual research costs; travel expenses; court filings fees; and service of process fees. Courts routinely reimburse counsel for similar expenses. *See e.g., In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, 2008 WL 4974782, at *18 (E.D. Pa. Nov. 21, 2008) (approving reimbursement of expenses for "duplication costs, online legal research, travel, meals, experts, telephone, fax services, transcripts, postage, messenger, mediator, filing and court fees, service fees, [and] transportation" based on declarations of counsel); *In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, at *32 (D.N.J. Sept. 13,

2005) (approving reimbursement of "costs expended for purposes of prosecuting this litigation, including substantial fees for experts; . . . travel and lodging expenses; [and] copying costs"); *Safety Components*, 166 F. Supp. 2d at 108 (similar).

The Notice informed Settlement Class Members that Lead Counsel would seek reimbursement of litigation expenses up to $60,000. The expenses are less than what was provided in the Notice and, to date, there have been no objections. ¶105; Evans Decl., Ex. A (Notice), p.1, ¶14. The requested expenses should, therefore, be awarded. *See Rite Aid*, 146 F. Supp. 2d at 736 ("plaintiffs seek reimbursement of expenses . . . which they have detailed in their submissions to us. These out-of-pocket expenses . . . are compensable . . . they are also unobjected to and, in our judgment, reasonable").

## V.    LEAD PLAINTIFFS SHOULD BE GRANTED PSLRA AWARDS

Lead Counsel also respectfully requests PSLRA awards to Lead Plaintiffs in the aggregate amount of $10,000 (or $5,000 each) for time and effort spent prosecuting the Action. 15 U.S.C. § 78u-4(a)(4). "Court[s] have found that the PSLRA permits courts to award lead plaintiffs in federal securities actions reimbursement for their time devoted to participating in and directing the litigation on behalf of the class." *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *22 (S.D.N.Y. Dec. 18, 2019). Reimbursement of such costs are allowed because they "encourage[] participation of plaintiffs in the active supervision of their counsel."

38

*Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000).

Here, Lead Plaintiffs, *inter alia*: produced trading records to Lead Counsel; moved to be appointed as lead plaintiffs; regularly communicated with Lead Counsel regarding the posture and progress of the case; reviewed all significant pleadings and briefs filed in the Action; reviewed the Court's orders and discussed them with counsel; consulted with counsel regarding the settlement negotiations; and evaluated and approved the proposed Settlement. Seiler Decl., ¶4; Reyes Decl., ¶4. These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives[]" (*In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009)), and the amounts sought are consistent with awards in other complex cases. *See Beltran v. Sos Ltd.*, 2023 WL 319895, at *8 (D.N.J. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL 316294 (D.N.J. Jan. 19, 2023) (awarding $5,000 to each lead plaintiff prior to motion to dismiss, noting that this amount is "significantly less than incentive payments approved in other securities class actions."); *Bed Bath & Beyond Inc.*, 2022 WL 21305086, at *8 ($5,000 award); *Pepe v. Cocrystal Pharma, Inc., et al.,* Case No. 2:18-cv-14901-KM-JBC, ECF No. 86 at ¶3 (D.N.J. Dec. 16, 2020) (awarding lead plaintiff $10,000 out of $1,265,000 settlement in case that settled before a motion to dismiss was filed) (Ex. 9); *Sun v. Han et al.*, No. 2:15-cv-00703-JMV-MF, ECF No.

39

77 at ¶6 (D.N.J. Mar. 6, 2018) (awarding lead plaintiff $20,000 out of $1.25 million settlement prior to class certification) (Ex. 10); *Walter Investment*, 2018 WL 8951073, at *2 (awarding lead plaintiff $10,000 out of $2,950,000 settlement prior to a decision on the motion to dismiss); *Andavarapu v. iBio, Inc. et al.,* No. 1:14-cv-01343-RGA, ECF No. 69 at ¶3 (D. Del. Apr. 21, 2016) (awarding lead plaintiff $10,000 out of $1.875 million settlement after amended complaint was dismissed without prejudice and prior to filing of second amended complaint) (Ex. 11).[19] Consequently, Lead Counsel respectfully requests that the Court approve the awards.

## VI.    CONCLUSION

For the foregoing reasons, Lead Counsel respectfully request the Court grant their motion.

Dated: July 14, 2025                    Respectfully submitted,

                                        **THE ROSEN LAW FIRM, P.A.**

                                        */s/ Erica L. Stone*
                                        Laurence M. Rosen
                                        Jing Chen

---

[19] *See also Par Pharm.*, 2013 WL 3930091, at *11 (awarding $18,000 to lead plaintiff prior to deposition); *In re Virgin Mobile USA IPO Litig.*, No. 07-cv-5619, ECF No. 146 at ¶19 (D.N.J. Dec. 8, 2010) (collectively awarding four lead plaintiffs a total of $113,820 out of $19.5 million settlement after commencement of discovery but prior to class certification) (Ex. 12); *San Antonio Fire and Police Pension Fund et al v. Dole Food Company Inc. et al*, No. 1:15-cv-1140, ECF No. 100 at ¶¶6-8 (D. Del. Jul. 18, 2017) (collectively awarding three lead plaintiffs $54,996.20 for their reasonable costs and expenses where settlement was reached shortly after discovery commenced) (Ex. 13).

One Gateway Center, Suite 2600
Newark, NJ 07102
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com
       jchen@rosenlegal.com

Phillip Kim (*Pro Hac Vice*)
Erica L. Stone
275 Madison Ave, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
       estone@rosenlegal.com

**GLANCY PRONGAY & MURRAY LLP**
Joseph D. Cohen (*Pro Hac Vice*)
Casey E. Sadler (*Pro Hac Vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel: (310) 201-9150
Email: jcohen@glancylaw.com
       csadler@glancylaw.com

*Co-Lead Counsel for Lead Plaintiffs and the Settlement Class*

41

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Erica L. Stone
Erica L. Stone

42