UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAVID RIGO FERNANDEZ**, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>**DOUYU INTERNATIONAL HOLDINGS LIMITED, SHAOJIE CHEN, and MINGMING SU**,<br><br>Defendants. | Civil Action No. 2:23-cv-03161 (SDA)<br><br>Hon. Stacey D. Adams, U.S.M.J.<br><br>**OPINION ON MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (ECF No. 81) AND MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES (ECF No. 82)**<br><br>**December 12, 2025** |

**STACEY D. ADAMS, UNITED STATES MAGISTRATE JUDGE**

This matter comes before the Court on the Motion filed by Plaintiffs Raphael Seiler ("Seiler") and Pedro Reyes ("Reyes") (together, "Lead Plaintiffs"), on behalf of themselves and those similarly situated, for: (1) Final Approval of the Class Action Settlement (ECF No. 81) ("Final Approval Motion"); and (2) Attorneys' Fees and Costs, and Lead Plaintiffs' Awards (ECF No. 82) ("Fee Motion"). Defendants DouYu International Holdings Limited ("DouYu"), Shaojie Chen, and Mingming Su (collectively, "Defendants") do not oppose the Motion. A Reply was filed on August 11, 2025 (ECF No. 84) that provided the Court with updated information. The Court held a final fairness hearing on August 18, 2025. For the reasons stated herein, the Motions are **GRANTED**.

**RELEVANT FACTUAL BACKGROUND/ PROCEDURAL HISTORY**

The Court incorporates by reference the factual background and relevant procedural history from its opinion granting preliminary approval dated March 31, 2025. *Fernandez v. DouYu Int'l Holdings Ltd.*, No. 23-cv-3161 (SDA), 2025 WL 972836, at *1-2 (D.N.J. Mar. 31, 2025)

1

(hereinafter, "Prelim. App. Op.") (ECF Nos. 78, 79). On August 24, 2023, the Court appointed Seiler and Reyes as the Lead Plaintiffs. (ECF No. 24). In that same Order, the Court appointed The Rosen Law Firm ("RLF") and Glancy Prongay & Murray LLP ("GPM") as co-lead counsel (hereinafter, together referred to as "Lead Counsel"). *(Id.)*.

The Court granted the Motion for Preliminary Approval on March 31, 2025. (Prelim. App. Op. at *15). Defendants provided Proof of Notice of the Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA") on April 9, 2025. (ECF No. 80). It was accompanied by a certification from Kyle S. Bingham, Director of Legal Noticing for Epiq Class Action & Claims Solutions Inc. (*Id.*). Lead Plaintiffs filed the instant Motions on July 14, 2025. (ECF Nos. 81, 82). Reply papers in further support of the Motions were filed on August 11, 2025. (ECF No. 84).

## THE PROPOSED SETTLEMENT

**The Proposed Settlement Class**

The Settlement Class is defined as "all Persons who purchased DouYu [ADSs] during the Class Period and were damaged thereby." (ECF No. 61, "Settlement Agreement," ¶ 1.34). The Class Period is defined as April 30, 2021 through November 27, 2023 (the "Class Period"). (*Id.* ¶ 1.4). The Settlement Class excludes Defendants; the present and former officers and directors of the Defendant company and their immediate families, as well as their legal representatives, heirs, successors or assigns and any entity in which such present and former officers and directors have or had a controlling interest; members of the individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest; and those who purchased company securities through private transactions and/or exchanges. (*Id.* ¶ 1.34).

**The Settlement**

The Settlement Agreement provides that Defendants shall pay a total of $2,250,000 into an escrow account to be used as a Settlement Fund in full and final settlement and release of all class claims. (*Id.* ¶¶ 1.33, 2.0). Following this Court's preliminary approval of the settlement, this amount was timely paid into the escrow account. (ECF No. 83 ¶ 58). From the Settlement Fund, Lead Counsel seeks a payment of $750,000 in attorneys' fees and $53,270.97 in costs. (ECF No. 82). The Settlement Agreement also proposes a service award of $5,000 to each of the Lead Plaintiffs, for a total of $10,000. (*Id.*). The balance of the settlement proceeds following these three payments, *i.e.,* $1,436,729.03, will be distributed among the settlement class members who timely filed a valid claim on a *pro rata* basis pursuant to the proposed Plan of Allocation. (ECF No. 83-1, "Evans Decl." at ECF-designated p. 13). Each class member's putative share of the settlement will be determined by the following formula:

> A.  For ADSs purchased and sold during the Settlement Class period, the Recognized Loss per ADS shall be the lessor of (1) the inflation per ADS upon purchase less the inflation per ADS upon sale; or (2) the purchase price per ADS minus the sales price per ADS.
>
> B.  For ADSs purchased during the Class Period and sold during the period November 28, 2023 through February 23, 2024, inclusive, the Recognized Loss shall be the *lesser* of: (1) the inflation per ADS upon purchase …; or (2) the difference between the purchase price per ADS and the average closing ADS price as of date of sale…
>
> C.  For ADSs purchased during the Class Period and retained as of the close of trading on February 23, 2024, the Recognized Loss shall be the *lesser* of: (1) the inflation per ADS upon purchase; or (2) the purchase price per ADS minus $.79 per ADS.

(*Id.* at ECF-designated pp. 13-14). To assist class members in calculating their loss, the class notice contains tables showing (i) the inflation per ADS based on the time period during which the ADS

was purchased, and (ii) the average closing ADS price on the date of sale. (*Id.* at ECF-designated p. 14-15).

**Notice of the Settlement**

Strategic Claims Services ("SCS") was appointed as the Claims Administrator in the Court's Preliminary Approval Opinion. (ECF No. 79, Prelim. App. Order ¶ 9). SCS was responsible for sending notice to potential class members. (Evans Decl. ¶ 1). To disseminate the notice, SCS obtained transfer records from DouYu and also utilized its own "Nominee Database," which contained the names and addresses of the largest and most common banks, brokers, and other financial institutions.[1] (ECF No. 83, Joint Declaration of Phillip Kim and Casey E. Sadler ("Joint Decl."), ¶ 65). From DouYu, SCS received the name of one entity that purchased or held DouYu ADS during the settlement class period. (*Id.* ¶ 64). From the Nominee Database, SCS identified another 2,467 potential settlement class members. (*Id.* ¶ 65). SCS then provided notice to the class members by (i) having the nominees send the beneficial purchasers/owners a postcard notice supplied by SCS; (ii) having the nominees email a link to the Long Notice and Proof of Claim form to the beneficial purchasers/owners; or (iii) obtaining from the nominees the contact information of the beneficial owners so SCS could mail or email the beneficial owners. (*Id.* ¶ 66). This mailing was completed on May 9, 2025, in accordance with the Preliminary Approval Order. (Evans Decl., ¶ 4).

---

[1] Because this is a securities class action, the majority of class members are expected to be beneficial purchasers whose securities are held in "street name" – meaning, the securities were purchased by brokerage firms, banks, institutions, and other third-party nominees in the name of the nominee, on behalf of the beneficial purchasers. (*Id.* ¶ 5). The names and addresses of these beneficial purchasers are only known to the nominees. (*Id.*). SCS maintains a master list consisting of 1,051 banks and brokerage companies and 1,416 mutual funds, insurance companies, pension funds, and money managers. (*Id.*).

Through the filing of the Final Approval Motion, 35,372 potential Settlement Class Members received notice. (Joint Decl. ¶ 67). Following the first round of mailing, SCS received 2,106 additional names and addresses of potential settlement members. (Evans Decl. ¶ 6). SCS received requests from two nominees to send them postcards so they could send them to their customers, and another nominee stated they send postcards to 244 of their customers. (*Id.*). To date, 7,141 postcard notices were mailed to potential settlement class members. (*Id.*). 205 postcards were returned as undeliverable. (*Id.* n. 2). The United States Postal Service provided forwarding addresses for 12, and SCS immediately mailed postcards to the updated addresses. (*Id.*). The remaining 193 Postcard Notices returned as undeliverable were "skip-traced" to obtain updated addresses and 85 were re-mailed to updated addresses. (*Id.*). As of the August 11, 2025, a total of 108 Postcard Notices remained undeliverable. (ECF No. 84-1, "Evans Supp. Decl.", ¶ 4, n. 2).

In addition to the above, SCS sent the Depository Trust Company ("DTC") a Long Notice and Proof of Claim for the DTC to publish on its Legal Notice System ("LENS") on April 28, 2025. (Evans Decl. ¶ 9). LENS provides DTC participants the ability to search and download legal notices and receive e-mail alerts based on particular notices or particular CUSIPs once a legal notice is posted. (*Id.*). The Summary Notice of Pendency and Proposed Class Action Settlement, per the Preliminary Approval Order, was transmitted over the *Globe Newswire* on May 9, 2025. (Evans Decl. ¶ 10; *id.* at Ex. D). SCS also maintained a toll-free telephone number for class members to call for information. (*Id.* ¶ 11). SCS established a webpage, www.strategicclaims.net/DouYu/ ("Settlement Website"). (*Id.* ¶ 12). The Settlement Website allowed for online claim filing, provided claim templates for institutional investors, set forth the current status of the case, provided important case deadlines, and contained a documents-section

with downloadable versions of the Long Form Notice and Proof of Claim, the Preliminary Approval Order, the Settlement and its exhibits, and the Second Amended Class Action Complaint. (*Id.*).

## GOVERNING LAW AND ANALYSIS

### I. Final Approval of Class Action Settlement

Approval of a class action settlement is a two-step process: (1) preliminary approval; and (2) a subsequent fairness hearing. *Easterday v. USPack Logistics*, No. 15-cv-7559 (RBK) (AMD), 2023 WL 4398491, at *5 (D.N.J. July 6, 2023) (internal citations omitted). Preliminary Approval was granted on March 31, 2025. (ECF Nos. 78, 79). The Court held the fairness hearing on August 18, 2025.

#### A. Requirements for Class Certification under Fed. R. Civ. P. 23

The parties request that the class be certified for settlement purposes only. (Settlement Agreement ¶ 3.0). The Third Circuit has observed that "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 799 (3d Cir. 1995) (alterations omitted). "The requirements of [Rule 23] (a) and (b) are designed to ensure that a proposed class has 'sufficient unity so that absent class members can fairly be bound by decisions of class representatives.'" *In re Prudential Ins. Co.*, 148 F.3d 283, 309 (3d Cir. 1998) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621(1997)).

#### 1. Fed. R. Civ. P. 23(a) and (b) Requirements

The requirements of Rule 23(a) must be met whether certification is sought for the purpose of proceeding with litigation or, as here, for the purpose of proceeding toward settlement. *See*

*Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 379 (3d Cir. 2013). Class certification is appropriate where the prospective class establishes: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *see In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016). All requirements of Fed. R. Civ. P. 23 must be proven by a preponderance of the evidence. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008).

The Court previously found that the Class here has met all of the requirements of Fed. R. Civ. P. 23(a) (Prelim. App. Op. at *4-6). As there have been no material changes since that time, the Court will not engage in another full analysis here. There are at least 3,625 valid claims. (Evans Supp. Decl. ¶ 9). This easily satisfies the numerosity requirement. The Court has already found the commonality, typicality, and adequacy of representation requirements have been met. (Prelim. App. Op. at *4-6). Accordingly, the Fed. R. Civ. P. 23(a) requirements have been met.

The parties must also demonstrate the proposed class satisfies "at least one of the three requirements listed in Rule 23(b)." *Beltran v. Sos Ltd.*, No. 21-cv-7454 (RBK) (EAP), 2023 WL 319895, at *12 (D.N.J. Jan. 3, 2023) (citing *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 345 (2011)). Here, Plaintiffs rely on Fed. R. Civ. P. 23(b)(2), which applies when "questions of law or fact common to class members predominate over any questions affecting only individual members," and when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Once again, the Court has already found that questions of law or fact common to class members met the predominance requirement, and

that proceeding as a class action is a superior method of adjudication because "[i]t would not be feasible nor financially desirable for the class members to pursue individual claims when the facts are common to all and the case can more effectively be managed in a single concentrated action." (Prelim. App. Op. at *7). Because nothing in the current motion changes this analysis, the Fed. R. Civ. P. 23(b) requirements have been met for the reasons previously stated by the Court.

### B. Notice Requirements

Next, the Court must determine if potential class members were properly notified. For classes certified under Fed. R. Civ. P. 23(b)(3), such as this one, Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 100 (D.N.J. Feb. 6, 2018). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The Court has already ruled that the proposed method of dissemination of the notice was reasonable. (Prelim. App. Op. at *14). The Court finds that the notice program satisfied due process. As explained above, the claims administrator SCS underwent a thorough notice program, which included the creation of a Settlement Website, notice in the *Globe Newswire*, and sending notices to 35,372 potential settlement class members. (Evans Decl., *passim*). SCS took measures to locate valid contact information for any mailings that came back as undeliverable. (*Id.*). As a result of the notice, SCS received 12,610 claims (3,625 of which were determined to be valid). (Evans Supp. Decl. ¶ 9). The Court is satisfied that the notice program complied with the Preliminary Approval Order, met the requirements of the Private Securities Litigation Reform Act ("PSLRA) pursuant to 15 U.S.C. § 78u-4, and satisfied due process.

### C. Whether the Settlement is Fair, Reasonable, and Adequate under Fed. R. Civ. P. 23(e)

The Court may only approve the settlement after a hearing and only on finding that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). This includes consideration of whether: the class representatives and counsel have adequately represented the class; the proposal was negotiated at arm's length; the relief provided for the class is adequate; and the proposal treats class members equitably relative to each other. *Mullane*, 339 U.S. at 314. In determining whether the relief is adequate, the Court must take into account: the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorneys' fees, including timing of payment; and any agreement required to be identified under Rule 23(e)(3). *See id.* In this Circuit, settlements, particularly in the context of large class actions, are favored. *See, e.g. Erheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (recognizing that:

> The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings…Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts [and] the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial).

In assessing the reasonableness of the settlement, the Court must be mindful that "[s]ettlements…reflect[] negotiated compromises. The role of a district court is not to determine whether the settlement is the fairest possible resolution [but only] whether the compromises reflected in the settlement…are fair, reasonable, and adequate when considered from the perspective of the class as a whole." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173-74 (3d

Cir. 2013) (citation omitted); *see Skeen v. BMW of N. Am., LLC*, No. 13-cv-1531 (WHW) (CLW), 2016 WL 4033969, at *7 (D.N.J. July 26, 2016).

To review the settlement, courts in this Circuit analyze the settlement using nine factors from *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), as well as the permissive and non-exhaustive factors from *In re Prudential Ins. Co.*, 148 F.3d at 323.

### 1. The *Girsh* Factors

The nine factors articulated in *Girsh* are:

(1) the complexity, expense and likely duration of the litigation;
(2) the reaction of the class to the settlement;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the risks of establishing liability;
(5) the risks of establishing damages;
(6) the risks of maintaining the class action through the trial;
(7) the ability of the defendants to withstand a greater judgment;
(8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]
(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F. 2d at 157. It is the settling parties' burden to demonstrate that the *Girsh* factors weigh in favor of approving the settlement. *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) (citations omitted).

The *Girsh* factors were already addressed at length in the Court's Preliminary Approval Opinion. (Prelim. App. Op. at 8-13). There was not a single objection to the proposed settlement, the Plan of Allocation, the proposed counsel fee, the expenses, or the Lead Plaintiffs' award. (Evans

Supp. Decl. ¶ 9).[2] Thus, the Court relies upon its prior analysis of the *Girsh* factors, and why they were met, and incorporates the same herein.

The Court adds that the reaction of the class to the settlement (the second *Girsh* factor) has been overwhelmingly positive. This factor "'attempts to gauge whether members of the class support the settlement,' by considering the number of objectors and opt-outs and the substance of any objections." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 321 (3d Cir. 2011) (quoting *In re Prudential Ins. Co.*, 148 F.3d at 318). As stated above, there was not a single valid objection to any aspect of the settlement. (Evans Supp. Decl. ¶ 9). Nor did anyone request to be excluded, or "opt-out", of the class. (*Id.* ¶ 7).

Even if the one objection received was valid, it would not change the Court's analysis. First, the fact that one settlement class member feels he should have received more does not render the settlement unfair, particularly given the fact that the vast majority of the class approves the settlement. *O'Hern v. Vida Longevity Fund, LP*, No. 21-cv-402, 2023 WL 3204044, at *7 (D. Del. May 2, 2023) ("When there are many class members and few objectors, there is a strong presumption in favor of approving the class action settlement under the second *Girsh* factor."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of Settlement."). Second, as the Court acknowledged in its Preliminary Approval Opinion, the class members here are receiving a higher percentage of recovery than in other securities class actions. *See e.g. In re Cendant Corp.*, 264 F.3d

---

[2] The Claims Administrator received one email from a purported Settlement Class Member who wanted to "express my disagreement with the settlement amount… it's way too little versus the impact…" (Evans Decl. ¶ 14). SCS responded to the individual via email explaining the process for filing a valid objection. (*Id.*). As of the filing of the Reply, the individual had not filed any formal or valid objection. (Evans Supp. Decl. ¶ 8).

at 241 (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997), *aff'd sub nom.*, 166 F.3d 581 (3d Cir. 1999) (approving settlement for 5.35% of estimated damages, overruling objections, and collecting cases approving "class settlements involving far smaller percentage recoveries"); *Schuler v. Meds. Co.,* No. 14-cv-1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (finding that a 4% recovery fell "squarely within the range of previous settlement approvals"); *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. 11-cv-2164, 2017 WL 2734714, at *11 (D.N.J. June 26, 2017) (approving settlement recovering 10% of damages). Here, even after the amounts for attorneys' fees, costs, and lead-plaintiffs' awards are subtracted from the total settlement fund, Plaintiffs are left with $1,436,729.03, which is still an approximately 15.6% recovery for the class from the estimated $9,200,000 loss. Therefore, the Court does not find this one purported objection, out of 3,625 claims, to warrant denial of final approval.

## 2. The *Prudential* Considerations

Since *Girsh*, the Third Circuit has held that, because of the "sea-change in the nature of class actions," it may be helpful to expand the *Girsh* factors to include permissive and non-exhaustive factors, including:

> [1] [T]he maturity of the underlying substantive issues . . . ; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved — or likely to be achieved — for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Pet Food Prods.*, 629 F.3d at 350 (quoting *In re Prudential Ins. Co.*, 148 F.3d at 323); *see In re Baby Prods.*, 708 F.3d at 174 ("Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential.

They are permissive and non-exhaustive, 'illustrat[ing] . . . [the] additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms.'") (internal citations omitted). "The Court does not have to perform analysis on each *Prudential* factor – rather it must address the factors that are relevant to the particular case at hand." *Castro v. Sanofi Pasteur Inc.*, No. 11-cv-7178 (MCA), 2017 WL 4776626, at *6 (D.N.J. Oct. 20, 2017).

Here, the relevant factors are whether class members were able to opt out, whether the provisions for attorneys' fees are reasonable, and whether the procedure for processing individual claims under the settlement is fair and reasonable. The Court finds these factors weigh in favor of approval of the settlement. The claims administrator has not received one opt out. (Evans Supp. Decl. ¶ 7). There have been no valid objections. Not a single class member took issue with the amount of counsel fees or costs. The procedure for processing individual claims is fair and reasonable, with due diligence exercised to notify potential class members, the opportunity for potential class members to submit a claim to receive a portion of the settlement proceeds, and an experienced claim administrator available to answer questions and process claims. Thus, as previously concluded by the Court in its Opinion and Order granting preliminary approval, the *Prudential* factors are easily satisfied.

## II.  Attorneys' Fees and Expenses

The Court next turns to the issue of the agreed-up attorneys' fee award, expenses, and service awards for the Lead Plaintiffs. Plaintiffs' unopposed motion seeks an attorneys' fee award of $750,000, which is 33⅓ % of the Settlement Fund, reimbursement of $53,270.97 in Litigation Expenses, and $10,000 total in service awards for the Lead Plaintiffs.

An award of attorneys' fees in a class action settlement is within the Court's discretion. *Rossi v. Procter & Gamble Co.*, No. 11-cv-7238 (JLL), 2013 WL 5523098, at *9 (D.N.J. Oct. 3,

13

2013). "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In common fund class actions such as this one, courts utilize the percentage-of-recovery method to determine the appropriate attorneys' fee. *In re Cendant Corp*, 264 F. 3d at 256; *see also Beltran*, 2023 WL 319895, at *7-8. "In common fund cases, the fees typically awarded to class counsel generally range between 19% and 45% of the Settlement Fund." *Beltran*, 2023 WL 319895, at *8 (citing *In re Gen. Motors*, 55 F. 3d at 822).

### A. The Lodestar

Even though the Court utilizes the percentage-of-recovery method here, the Third Circuit nevertheless recommends that the award be "cross-checked" against the lodestar method to ensure its reasonableness. At the time of filing their motion, RLF and GPM had expended 669.9 hours on this litigation. (*See* Joint Decl., ¶ 83; ECF No. 83-2, "Cohen Decl."; ECF No. 83-3, "Kim Decl."). The Court finds this total amount to be reasonable in a litigation of this size and complexity. Lead Counsel drafted pleadings, investigated Plaintiffs' claims, opposed a request for leave to file a motion to dismiss, engaged in discovery, participated in mediation, negotiated extensively with Defendants' counsel, drafted motions, negotiated the settlement, prepared the settlement documents and Plan of Allocation, and prepared the motion papers for preliminary and final approval. (Joint Decl. ¶¶ 7, 8). Importantly, Lead Counsel utilized lower rate counsel and paralegals to keep fees down where appropriate.

Turning to the rate charged and time spent, RLF expended 421.4 hours, for a total lodestar of $441,480.00. (Kim Decl., ¶ 5; *id.* Ex. A). The hourly rates charged included: (i) $1,400 for one partner; (ii) $1,100 for another partner; (iii) $975 for of counsel; (iv) $550 for an associate; (v) $300 for one paralegal; and (vi) $275 for a second paralegal. (*Id.* Ex. A). GPM expended 248.5

hours, for a total lodestar of $254,853. (Cohen Decl., ¶ 6; *id.* Ex. A). The hourly rates charged included: (i) $1,050 for one partner; (ii) $1,225 for a second partner; (iii) $650 for a senior associate; and (iv) $365 to $400 for paralegals. The Court finds these rates are reasonable and commensurate with attorneys of similar experience in this geographic region.

Thus, there is a total lodestar of $696,333. As a result, the requested fee of $750,000 would utilize a lodestar multiplier of approximately 1.08. Courts in this District have approved similar lodestar multipliers in class actions. *See In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (approving a 4.3 lodestar multiplier); *In re Prudential*, 148 F. 3d at 341 (noting courts have approved lodestar multipliers from 1 to 4 in common fund cases). The Court is satisfied, after doing a lodestar cross check, that a 1.08 multiplier is reasonable.

RLF incurred $28,428.98 for expenses inclusive of filing fees, expert fees, investigation fees, service of process fees, research, class notice expenses, and travel expenses. (Kim Decl.¶ 8, Ex. B). GPM incurred $24,841.99 for expenses inclusive of filing fees, expert fees, investigation fees, research, and travel expenses. (Cohen Decl.¶ 8, Ex. B). The Court finds these fees to be reasonable.

### B. The *Gunter* Factors

Traditionally, courts consider the following factors in determining the appropriate award of attorneys' fees in a class action: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Gunter v. Ridgewood Energy Corp.*, 223 F. 3d 190, 195 n.1 (3d Cir. 2000). In the District of New

Jersey, "courts routinely approve agreed-upon attorney's fees when the amount is independent from the class recovery and does not diminish the benefit to the class." *Oliver v. BMW of N. Am., LLC*, No. 17-cv-12979, 2021 WL 870662, at *10 (D.N.J. Mar. 8, 2021) (collecting cases). Each factor is addressed in turn below.

### 1. The Fund Is Substantial and Confers a Benefit Upon the Class Members

This factor considers the fees requested as compared to the number of class members to be benefitted. *Beneli*, 324 F.R.D. at 108. Here, there are 3,625 claims that have been submitted. The Settlement Fund is $2.25 million. After subtracting the requested fees of $750,000, service awards of $10,000, and expenses of $53,270.97, this leaves $1,436,729.03 for distribution among the class members. The Court finds that Lead Counsel has worked diligently to obtain a substantial benefit for these class members who were allegedly wronged by Defendants' conduct. Accordingly, the Court finds this factor weighs in favor of the requested fee.

### 2. There were No Objections to the Requested Attorneys' Fees

The fact that no objections to the requested fees were submitted, (Evans Supp. Decl. ¶ 8), further weighs in favor of approving the requested fees.

### 3. Lead Counsel Is Skilled and Efficient in the Arena of Securities Class Action Litigation

As discussed by the Court's analysis of the Fed. R. Civ. P. 23(b) factors in the Preliminary Approval Opinion, Lead Counsel is highly experienced in securities class actions. (Prelim. App. Op. at *6). RLF has served as lead counsel in numerous class actions throughout the country achieving successful results. (Kim Decl., Ex. C). RLF has recovered hundreds of millions of dollars for class members throughout the country. (*Id.*). The same can be said for GPM, which has also recovered hundreds of millions of dollars for class members in class actions pending

throughout the country. (Cohen Decl., Ex. C). The Court is satisfied that Lead Counsel has the requisite knowledge, experience, and skill in litigating these class actions which warrant awarding the requested fee.

### 4. The Litigation was Sufficiently Complex

The Court has explained in its Preliminary Approval Opinion that this litigation was sufficiently complex in its prior analysis of the *Girsh* factors. (Prelim. App. Op. at *9). "Federal securities class actions by definition involve complicated issues of law and fact." *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. 04-cv-374 (JAP), 2008 WL 9447623, at *17 (D.N.J. Dec. 9, 2008). This, coupled with the fact that class counsel has done extensive investigation, retained experts, worked with Defendants' counsel to come to a suitable agreement, filed or opposed motions, and successfully implemented the notice program, all weigh in favor of approving the requested fees in this case.

### 5. Lead Counsel Undertook the Risk of Non-Payment

In matters such as this one, where the action is taken on a contingent fee basis, Lead Counsel undertook the risk that they would not settle, or would not succeed at trial, and therefore risked non-payment. "Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees." *Yedlowski v. Roka Bioscience*, No. 14-cv-8020 (FLW) (TJB), 2016 WL 6661336, at *21-22 (D.N.J. Nov. 10, 2016) (collecting cases). This factor weighs in favor of approving the requested fees.

### 6. Lead Counsel Devoted Substantial Time to this Matter

As explained, *supra*, in the Court's lodestar calculation, Lead Counsel has expended 669.9 hours to this litigation. "This factor is usually considered with the lodestar cross-check to look at reasonableness of counsel's requested fee." *Id.* at *22. This demonstrates the substantial time

counsel devoted to this matter, even though it was subject to an automatic stay of discovery under the PSLRA. The Court finds this to be a reasonable amount of time to spend on a securities class action of this magnitude, and finds this factor weighs in favor of approving the requested fees.

### 7. The Fees Requested are Similar to the Awards In Other Securities Class Actions.

In support of their Motion for Attorneys' Fees, Lead Counsel provides a chart listing cases in the Third Circuit where courts have approved a counsel fee of 33% or higher in class actions. (Joint Decl., Ex 7). These examples further weigh in support of approving the requested fees award. As explained above, the fees requested in securities class actions range from 19% to 45%. The Court finds in this matter that a 33⅓% award falls midway through the range of approved fees and weighs in favor of awarding the requested fees.

### C. Reimbursement of Expenses

Next, Lead Counsel requests reimbursement of $53,270.97 in litigation expenses. (Joint Decl. ¶ 99; Cohen Decl. Ex. B; Kim Decl. Ex. B). The Court notes that the Notice informed class members that Lead Counsel would seek reimbursement of expenses up to $60,000, and no objections were received to the requested expenses. In the instant application, Lead Counsel actually seeks less than what was set forth in the notice. The Court will not go through each expense line by line, but finds that the expenses for filing fees, experts, private investigators, online research, service of process, travel, and implementation of the notice program are all inherently reasonable in this thoroughly investigated matter. Courts have approved similar expenses. *See In re Remeron End-Payor Antitrust Litig.*, Nos. 02-cv-2007, 04-cv-5126 (FSH), 2005 WL 2230314, at \*32 (D.N.J. Sept. 13, 2005) (approving expenses for experts, travel, and copying costs); *Yong Soon Oh v. AT & T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (approving expenses for travel, depositions, legal research, travel, and messengers).

### D. Service Awards

"Courts may approve incentive awards in class action cases to particular members of the class 'to reward the public service performed by lead plaintiffs in contributing to the vitality and enforcement of securities laws.'" *Beltran*, 2023 WL 319895, at *8 (citing *In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d 327, 344 (D.N.J. 2002)). Pursuant to the PSLRA, Lead Plaintiffs may receive a service award. 15 U.S.C. § 78u-4(a)(4). Lead Counsel requests that each Lead Plaintiff, Raphael Seiler and Pedro Reyes, receive $5,000 as a service award.

The Court finds that the Lead Plaintiffs have worked closely with Lead Counsel throughout the litigation. (Joint Decl., ¶ 104). Specifically, they: (1) communicated with counsel regarding the posture and progress of the case; (2) compiled and produced their trading; (3) moved to be appointed the Lead Plaintiffs in this action; (4) reviewed all pleadings and court orders; (5) discussed settlement strategy; (6) evaluated the settlement amount; and (7) finalized the settlement. (*Id.*; *see id.* Exs. 4, 5; *see also* ECF Nos. 83-4, 83-5). The Court is satisfied that Lead Plaintiffs worked diligently to achieve the desired result for the class, warranting a service award to each of them in the amounts requested.

### CONCLUSION

For the foregoing reasons, both the Final Approval Motion (ECF No. 81) and the Fee Motion (ECF No. 82) are **GRANTED**. Accompanying Orders will be entered.

*s/ Stacey D. Adams*
Hon. Stacey D. Adams
United States Magistrate Judge

December 12, 2025